**Lynne WANG, Yu Fang Ines Kai, and Hui Jung Pao, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**CHINESE DAILY NEWS, INC., et al., Defendants.**

No. CV04–1498 CBM.

United States District Court, C.D. California, Western Division.

Jan. 20, 2005.

Steven D. Atkinson, Cerritos, CA, Scott K. Dauscher, Atkinson, Andelson, Loya, Ruud & Romo, Cerritos, CA, for defendant-petitioner Chinese Daily News.

Della Bahan, Jennifer Reisch, Peter Bibring, Bahan & Associates, Pasadena, CA, for plaintiffs-respondents.

## AMENDED ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

CONSUELO BLAND MARSHALL, District Judge.

The matter before the Court is Plaintiffs' Motion for Class Certification. On November 15, 2004, counsel for the parties appeared before the Court, the Honorable Consuelo B. Marshall presiding. Upon consideration of the papers and arguments submitted, Plaintiff's Motion is **GRANTED**.

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND & PROCEDURAL HISTORY

Plaintiffs Lynne Wang, Yu Fang Ines Kai, and Hui Jung Pao, on behalf of themselves and all others similarly situated, filed this suit on March 5, 2004, alleging multiple labor violations by Defendant Chinese Daily News, Inc. pursuant to the Fair Labor Standards Act ("FLSA"), the California Business and Professions Code § 17200 *et seq.* and the California Labor Code. Defendant publishes the largest Chinese language newspaper in North America. Plaintiffs are current and former employees of Defendant's Monterey Park office, which has nearly 200 employees. None of the Plaintiffs is a native English speaker, and some cannot read or write in English. Plaintiffs allege that Defendant violated California Labor laws by denying its employees the following protections: (1) overtime wages and statutory penalties to which they are entitled; (2) the opportunity to take meal and rest breaks or to receive appropriate penalties in lieu of such breaks; and (3) appropriate payroll records and item-

ized wage statements containing the information required by state law.

On June 24, 2004, Plaintiffs filed this Motion for Class Certification pursuant to the Federal Rules of Civil Procedure 23(b)(2) or, alternatively, 23(b)(3). Plaintiffs request certification of a class consisting of "[a]ll former, current, and future non-exempt employees of Defendant who worked at Chinese Daily News in Monterey Park, California at any time since March 5, 2000." This motion does not concern the FLSA claims, which require individual consent and cannot be litigated pursuant to Rule 23. Defendant filed a timely Opposition on July 26, 2004. Plaintiffs filed a timely Reply on August 8, 2004. The Court issued an order granting the class certification on November 23, 2004. On December 2, 2004, Defendant filed a Motion for Reconsideration, which the Court denied as moot based on its intent to issue this Amended Order addressing the various issues raised in the Motion for Reconsideration.

## STANDARD OF LAW

Federal Rules of Civil Procedure Rule 23 ("FRCP 23") governs the certification of class actions. A class action must meet the requirements of Rule 23(a) and fall within one of three categories set forth in Rule 23(b). For a class to be certified under Rule 23(a), Plaintiffs must show that the following conditions are met: (1) the class is so numerous that joinder of all members is impractical; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representatives will fairly and adequately represent the interests of the class. *See also Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

In addition, Rule 23(b) requires one of the following subdivisions to be met: (1) there is risk of inconsistent or unfair adjudication; (2) the defendant acted on grounds generally applicable to the class, making injunctive or declaratory relief appropriate as to the class as a whole; or (3) common questions of law or fact predominate and class resolution is superior to other available methods for fair

and efficient adjudication of the controversy. Rule 23(b).

A district court may certify a class only if, after "rigorous analysis," it determines that the plaintiff has established by sufficient evidence that all of the requirements set forth by Rule 23 are satisfied. *See General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 158–161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). In determining whether an action warrants class treatment under FRCP 23, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen,* 417 U.S. at 177, 94 S.Ct. 2140. At this early stage of the litigation, the Court must only determine if the plaintiffs have proffered enough evidence to meet the requirements of FRCP 23, not weigh competing evidence. *See Staton, et al. v. Boeing Company,* 327 F.3d 938, 954 (9th Cir.2003). On a motion for class certification, the court "is bound to take the substantive allegations of the complaint as true." *Blackie v. Barrack,* 524 F.2d 891, 901 n. 17 (9th Cir.1975).

## ANALYSIS

### I. FRCP 23(a) Prerequisites to Class Certification are Satisfied

The Court finds that the class consisting of "[a]ll former, current, and future non-exempt employees of Defendant who worked at Chinese Daily News in Monterey Park, California at any time since March 5, 2000" satisfies the four prerequisites for class certification under Rule 23(a).

### A. Numerosity

Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all parties is impracticable." However, "impracticable" does not mean impossible; it refers only to the difficulty or inconvenience of joining all members of the class. *See Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913 (9th Cir.1964). Although there is no fixed number of class members which either compels or precludes the certification of a

class, "where a class is large in numbers, joinder will usually be impracticable." *Jordan v. County of Los Angeles,* 669 F.2d 1311, 1319 (9th Cir.1982), *vacated on other grounds,* 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982). "No exact numerical cut-off can be stated. Rather, the specific facts of each case must be examined." *General Telephone Co. v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). Many courts have found that classes of fewer than 100 persons are sufficiently numerous to render joinder impracticable. *Jordan,* 669 F.2d at 1319 n. 10. In addition to the size of the class, the court may also consider the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factors relevant to the practicability of joining all the class members. *Jordan,* 669 F.2d at 1319.

■ Plaintiffs present a declaration by a former reporter and deputy city editor stating that approximately 190 employees of CDN's Monterey Park office fall within the proposed class. *See* Chao Decl., ¶ 13. Defendant, however, contends that some of these employees are exempt and therefore do not fall within the definition of the class. Specifically, Defendant argues that reporters and sales department "account executives" are exempt and therefore should not be counted among the members of the class. Defendant further contends that employees with different job duties should be divided into subclasses and that each of these subclasses fails to satisfy the requirement of "numerosity."

These arguments are unpersuasive for several reasons. First, CDN's classification of reporters and account executives· as "exempt" is being challenged by Plaintiffs in this case. Requiring Plaintiffs to show that reporters and account executives are "non-exempt" at this stage would involving addressing the success of their claims on the merits. In *Eisen v. Carlisle &* Jacquelin, 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), the Court found "nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a

class action." *See also Staton, et al. v. Boeing Company,* 327 F.3d 938, 954 (9th Cir. 2003) (finding that, in deciding whether or not to certify a class, the court must only determine if the plaintiffs have proffered enough evidence to meet the requirements of FRCP 23, not weigh competing evidence); *Blackie v. Barrack,* 524 F.2d 891, 901 n. 17 (9th Cir.1975) (in deciding a motion for class certification, the court "is bound to take the substantive allegations of the complaint as true"). Moreover, it is Defendant who has the burden of proving that certain employees are exempt from California's wage and overtime protections, as the application of an exemption is an affirmative defense. *See Ramirez,* 20 Cal.4th at 794–95, 85 Cal. Rptr.2d 844, 978 P.2d 2 (citing *Corning Glass Works v. Brennan,* 417 U.S. 188, 196–97, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974)); *Nordquist v. McGraw–Hill Broadcasting Co.,* 32 Cal. App.4th 555, 562, 38 Cal.Rptr.2d 221 (1995).

■ Even if this Court were to decide at some future time that two subclasses are appropriate (i.e. one subclass of employees who Defendant acknowledges are non-exempt and another subclass of employees who Defendant classifies as exempt), each subclass would still meet the numerosity requirement of Rule 23(a). The evidence presented by Defendant indicates that approximately 40 current employees—and an unknown number of former employees—in the Monterey Park Office are classified as exempt. This leaves approximately 160 employees who are classified as non-exempt by Defendant. Thus, both subclasses are large enough to satisfy the numerosity requirement. Defendant, however, contends that a separate subclass is required for each position and that the three representative Plaintiffs, who worked as a reporter, a clerk, and an account executive, cannot represent employees in any other positions. The declaration of Hsiao–Tse Chao sets forth fifteen different positions, with the number of employees in each position ranging from 2 to 21. Based on these numbers, Defendant argues that a subclass consisting of any single position would not satisfy the numerosity require-

ment. *See Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir.1981) (finding that each subclass must independently satisfy the requirements of Rule 23(a)). This argument lacks merit, as all non-exempt employees and all exempt employees (if any exist) are similarly situated with respect to the claims made by Plaintiffs. The claims of non-exempt employees present common questions of law and fact and do not depend on specific job duties. Thus, there is no need for each job category to constitute a separate subclass. *Cf. Staton v. Boeing*, 327 F.3d at 944, 953 (upholding certification of a class united by a complex of company-wide discriminatory practices against African–Americans even thought the class was "broad and diverse ... encompass[ing] some 15,000 employees, from a wide range of positions both salaried and hourly, who are employed at Boeing facilities located in 27 different states").[1]

Defendant also argues that joinder is not "impractical" because Plaintiffs have not shown geographic dispersion of the class members or inability to bring individual suits. The only case cited by Defendant in support of this argument is *Tietz v. Bowen*, 695 F.Supp. 441, 445 (N.D.Cal.1987) (affirmed without a written opinion in an unpublished Ninth Circuit decision). In that case, however, the district court found joinder "impracticable" based on the class members' geographic diversity and their lack of means to bring individual suits because the class included only twenty-seven members. These facts are easily distinguishable from the present case, where joinder is impractical based solely on the fact that there are over one hundred putative class members. Furthermore, the court in *Tietz* never found that geographic dispersion and inability to bring individual suits were *required* to satisfy the numerosity requirement of Rule 23(a). Lastly, Defendant cites no persuasive authority in support of its argument that the Court should defer ruling on this Motion until after

the opt-in period on Plaintiff's FLSA claims has expired. Therefore, the Court finds that the numerosity requirement is satisfied.

**B. Commonality**

■ Rule 23(a)(2) requires that there be questions of law or fact common to the class. The commonality preconditions of Rule 23(a)(2) are "construed permissively." *See Hanlon*, 150 F.3d at 1019. "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Staton*, 327 F.3d at 953 (9th Cir.2003) (quoting *Hanlon*, 150 F.3d at 1019). Members of the class may possess different avenues of redress, but their claims must stem from the same source. *See Hanlon*, 150 F.3d at 1019.

■ Plaintiffs set forth numerous common questions of law and fact arising from Defendant's alleged pattern of violating state labor standards. These questions include but are not limited to: whether Defendant violated the California Labor Code by misclassifying certain employees as exempt; whether Defendant failed to pay overtime compensation to non-exempt employees who worked more than 40 hrs per week; whether Defendant deprived non-exempt employees of rest and meal breaks; whether Defendant failed to keep accurate records; whether Defendant failed to provide accurate itemized wage statements. Additional common questions of fact include: whether class members receive their pay through a common compensation program or payroll system; whether and how Defendant determined the hours its employees actually worked or spent on exempt versus non-exempt work; and whether Defendant has centralized oversight and supervision of its employees. These common questions are sufficient to satisfy Rule 23(a)(2). *See, e.g., Staton*, 327 F.3d at 954 (holding that plaintiffs share the contention

---

1. Defendant erroneously relies on *McLaughlin v. Ho Fat Seto*, 850 F.2d 586 (9th Cir.1988). In that case, which involved a collective action under FLSA § 16(b), not Rule 23, the court rejected the employer's argument that the district court

erred in determining a class-wide violation of FLSA because the testifying employees were not "fairly" representational of the remaining employees. The court held that the employees who testified "represented the entire class."

that discriminatory practices at Boeing are widespread and entrenched is enough to meet the commonality requirement); *Vizcaino v. United States District Court*, 173 F.3d 713, 722 (9th Cir.1999) (holding common question presented by employees who claimed to have been denied benefits to which they were entitled as common law employees); *Morillion v. Royal Packing Co.*, 22 Cal.4th 575, 94 Cal.Rptr.2d 3, 995 P.2d 139 (2000) (reversing dismissal of class action lawsuit by agricultural workers to recover pay for time spent commuting to fields on employer's buses); *Madera Police Officers Ass'n v. City of Madera*, 36 Cal.3d 403, 204 Cal.Rptr. 422, 682 P.2d 1087 (1984) (concluding that a class of city police officers, sergeants, and dispatchers were entitled to compensation for overtime hours worked as a result of the limitations placed on their activities and conduct during mealtime periods); *Los Angeles Fire Police Protective League v. City of Los Angeles*, 23 Cal.App.3d 67, 99 Cal.Rptr. 908 (Cal.Ct.App.1972) (holding that whether lunch periods constitute on-duty time given constraints generally applied to employees during those periods was a common question of law supporting class certification).

### C. Typicality

■ Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The Supreme Court has noted that the "commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. at 157 n. 13, 102 S.Ct. 2364; *accord Staton*, 327 F.3d at 957. "Under the rule's permissive standards, representative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. It is sufficient if the class representatives and members of the class "share a 'common issue of law or fact,'" *California Rural Legal Assistance v. Legal Services Corp.*, 917 F.2d 1171, 1175 (9th Cir.1990)(*quoting Blackie*, 524 F.2d at 904), "and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief." *Id.* (*quoting Sullivan v. Chase Inv.*

*Serv. of Boston*, 79 F.R.D. 246, 257 (N.D.Cal. 1978)). In *Staton*, the Ninth Circuit found that "typicality was assured by the 'broadly selected cross-section ... of Boeing employees' serving as named plaintiffs." 327 F.3d at 951.

■ Here, Plaintiffs argue that Defendant applied unlawful wage and hour-related policies to all members of the proposed class through a centralized management structure and that the application of those policies systematically deprived class members of their rights. The declarations submitted by Plaintiffs in support of this Motion indicate that the Plaintiffs' claims are typical of the class. The three named Plaintiffs have worked in various capacities at CDN's Monterey Park office. Plaintiff Lynn Wang declares that she has worked as a reporter in the Monterey Park office since 1987. Plaintiff Hui Jung Pao declares that he worked as a clerk in the Archive Room from April 1990 to approximately September 2001. From October 2001 to the present, he has worked as an advertising account agent in the Sales Department. Plaintiff Yu Fang Ines Kai began his employment with CDN in 1990 as a typist. From 1991 to August 1993, he worked as a clerk in the classified advertisements department. All of the named Plaintiffs declare that they were not paid overtime wages and that they were not given the opportunity to take meal and rest breaks or to receive appropriate penalties in lieu of such breaks. Plaintiffs also submit declarations by six other employees who work in the Monterey Park office as a driver, a packer, an editor, an advertising account agent in the Sales Department, and two as reporters. These employees also declare that they were not paid overtime wages or given rest periods and meal breaks, thereby raising the same legal issues as the named Plaintiffs. Since the named Plaintiffs raise the same Labor Code violations as other putative class members, their claims are typical of the class.

Defendant argues that the typicality requirement is not met because the class would include both employees in the named Plaintiffs' positions and employees in other positions. Defendant relies primarily on *Kelly v.*

*SBC, Inc.,* 5 Wage & Hour Cas.2d (BNA) (N.D.Cal.1998), which held that the named plaintiffs could not represent class members in other positions classified as exempt.[2] The facts of the present case are distinguishable from *Kelly* because the named Plaintiffs include a reporter and a sales department account executive, and therefore represent the only two positions that Defendant argues are exempt. With respect to the named Plaintiff in the present case who is classified as non-exempt, Defendant makes no argument as to why this Plaintiff's claims are not typical of all employees classified as non-exempt in the Monterey Park office. Finally, Defendant notes that class certification is precluded in cases involving potential conflict between class members, but Defendant does not assert any specific conflict among class members in the present case. The Court therefore finds that the typicality requirement is satisfied.

### D. Adequacy of Representation

█ Rule 23(a)(4) permits the certification of a class action as long as "the representative parties will fairly and adequately protect the interests of the class." To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them. *See Hansberry v. Lee,* 311 U.S. 32, 42–43, 61 S.Ct. 115, 85 L.Ed. 22 (1940). In order to determine whether the named Plaintiffs adequately and fairly represent absent class members, the court should address the following questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? *Hanlon,* 150 F.3d at 1020; *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir.1978).

Plaintiffs argue that the named Plaintiffs represent the interests of putative class members as they have all been denied over-time wages, meal and rest breaks, itemized wage statements, and accurate payroll records. The representatives and class members alike seek to put an end to Defendant's general practice of failing to comply with the wage and hour laws. Moreover, Plaintiffs' counsel has rigorously prosecuted this action in that they have solicited class members, retained an expert, and conducted research to support their allegations. *See Staton,* 327 F.3d at 957–58 (finding adequacy of representation when counsel conducted broad research, interviewed some 1300 employees, held many meetings with class members, and achieved some relief from the defendant).

Defendant, however, makes several arguments opposing the adequacy of the named representatives. First, Defendant contends that a conflict exists between class representatives and class members based on the declarations of eight employees, submitted by Defendant, stating that they do not want to be included in this lawsuit, that they do not believe Plaintiffs can adequately represent their interests, and that they wish to represent their own interests. However, none of these individuals offers any reason *why* Plaintiffs cannot adequately represent their interests. Defendant cites no authority holding that named representatives cannot adequately represent the class simply because certain putative class members want to represents their own interests.

Second, Defendant argues that the lead Plaintiff Lynne Wang is not credible because her testimony was discredited by an NLRB hearing officer. This argument is also unpersuasive, as the Hearing Officer's Report discredits Ms. Wang's testimony only on one particular point. One of the authorities on which Defendant relies specifies that "[f]or an assault on the class representative's credibility to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility to

**2.** Defendant also cites *McLaughlin v. Ho Fat Seto,* 850 F.2d 586 (9th Cir.1988). However, this case does not support defendant's argument or address class certification under Rule 23(a). In *Seto,* the defendant challenged the district court's award of back wages and damages under the FLSA based on the testimony of five witnesses who, according to the defendant, did not represent all employees. The Ninth Circuit upheld the district court's decision, finding that the five witnesses "fairly represented the entire class of employees." *Id.* at 590.

the detriment of the absent class members' claims." *Dubin v. Miller*, 132 F.R.D. 269, 272 (D.Colo.1990) (emphasis added). Here, Defendant fails to offer evidence showing that a fact finder might reasonably focus on Ms. Wang's credibility to the detriment of the class members' claims.[3]

Third, Defendant argues that Plaintiffs' have an ulterior motive in bringing this lawsuit which conflicts with the interests of the class. Defendant contends that Plaintiffs are strong union supporters and organizer and have filed this lawsuit as part of their campaign to unionize CDN. Defendant presents no evidence, however, that this lawsuit was filed to pressure CDN to unionize. The only evidence submitted by Defendant in support of this argument is a charge against CDN filed by the Communication Workers of America, AFL–CIO, alleging that CDN has engaged in unfair labor practices by prohibiting discussion of matters relating to the Union during work hours and threatening employees with discipline and/or termination if they did so. None of the representative Plaintiffs' names are attached to this charge. Moreover, even if representative Plaintiffs were involved in bringing these charges before the NLRB, that does not create a conflict in their representation of class members in the present action, which involves wage and hour laws. Plaintiffs' attorney specifically declares that this lawsuit is not supported financially by the Communication Workers of America, AFL–CIO, or any other third party. Furthermore, even if the union were involved in this case, that is no bar to class certification. *See, e.g., Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142 (4th Cir.1992).

Therefore, the Court finds that the adequacy of representation requirement is satisfied.

## II. Class Certification Under FRCP 23(b)(2)

■ Class certification under Rule 23(b)(2) is appropriate when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief corresponding declaratory relief with respect to the class as a whole." Rule 23(b)(2). Unlike Rule 23(b)(3), Rule 23(b)(2) does not require the predominance of common questions of law or fact. Nor does it require notice and the opportunity to opt out of the class. The Ninth Circuit has recognized that "class actions certified under Rule 23(b)(2) are not limited to actions requesting only injunctive or declaratory relief, but may include cases that also seek monetary damages." *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir.1986). However, the monetary damages must be "incidental to the primary claim for injunctive relief." *Id.; see also* F.R.C.P. Advisory Committee Notes to the 1966 Amendments to Rule 23 (clarifying that a class may not be maintained under subpart (b)(2) where the appropriate final relief relates exclusively or predominantly to monetary damages). The use of the word "incidental" in this context was intended to mean "secondary" to injunctive relief. *Molski v. Gleich*, 318 F.3d 937, 950 n. 14 (9th Cir.2003).[4] The Ninth Circuit has refused to adopt a "bright-line rule" distinguishing between incidental and non-incidental damages for the purpose of Rule 23(b)(2) certification. *Id.* at 950. Rather, the Ninth Circuit has focused on the language of Rule 23(b)(2) and

---

3. The other cases relied on by Defendant are also inapposite. In *Kline v. Wolf*, 88 F.R.D. 696, 698–99 (S.D.N.Y.1981), the court found that representative plaintiff Black was not credible because he made statements in his deposition that supported the defendant's argument and made him subject to unique defenses. Ms. Wang has made no such statements pertaining to the present case. In *Folding Cartons v. American Can Co.*, 79 F.R.D. 698, 703 (1978), a court found that the representative plaintiff had participated in deceptive selling schemes and had deliberately lied to conceal its actions. There is no evidence that Ms. Wang has engaged in any illegal activity or that she deliberately lied.

4. In opposing class certification under Rule 23(b)(2), Defendant erroneously relies on the Fifth Circuit's decision in *Allison*, 151 F.3d 402, 415 (5th Cir.1998) (holding that employees' claims for monetary damages rendered the case unsuitable for class certification). In *Allison*, the Fifth Circuit found that monetary damages are "incidental" to injunctive relief if they are limited to "incidental damages," that is, damages to which the class would automatically be entitled once liability is established. *Id.* at 415. The Ninth Circuit rejected the *Allison* court's interpretation of "incidental" in *Molski*, 318 F.3d at 949.

the intent of the plaintiffs in bringing the suit. *Id. See also Kanter v. Warner–Lambert Co.,* 265 F.3d 853, 860 (9th Cir.2001) (finding Rule 23(b)(2) inapplicable in a deceptive advertising case where a significant award of monetary damages litigation would "likely accomplish" what the court believed to be plaintiffs' "essential goal in this litigation without the added spur of an injunction").

In the present case, Plaintiffs' Second Claim for Relief for Violation of the California Labor Code states that "[a]s a result of the unlawful acts of Defendants, Plaintiffs have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, plus interest thereon, attorneys' fees, and costs, under Labor Code section 1194 and 218.5." The Second Claim for Relief also requests waiting time penalties pursuant to Labor Code § 203 for those members of the class who are no longer employed by Defendant. Only the very last sentence of the Second Claim for Relief notes that "[i]n addition, Plaintiffs are entitled to injunctive relief to prevent future violation of their rights under the California Labor Code." Compl. at p. 14, lines 15–19. Thus, the Second Claim for Relief appears to be predominantly for monetary damages. Moreover, California's wage and hour laws do not provide an explicit, private right to injunctive relief.[5]

Plaintiffs' Third Claim for Relief for Unfair Business Practices in Violation of California Business & Professions Code § 17200 et seq., however, alleges that "injunctive relief is necessary to prevent Defendant from continuing to engage in unfair and unlawful business practices." Compl. at p. 16, lines 14–16.

Plaintiffs further allege that "pecuniary compensation alone would not afford adequate and complete relief" because "it is difficult to measure the amount of monetary damages that would compensate future employees." *Id.* at lines 20–23. Thus, without injunctive relief, "a multiplicity of actions will result." *Id.* at lines 19–20. Plaintiffs allege that Defendant's acts "will cause great and irreparable damage to Plaintiff unless Defendant is restrained from committing their unlawful compensation policies and practices."

In deciding whether the claim for injunctive relief predominates, the Court considers both the language of Rule 23(b)(2) and Plaintiffs' intent in bringing this action. Plaintiffs' have alleged that Defendant refused to comply with California wage and hour laws, thereby making appropriate injunctive relief enjoining Defendant from continuing to violate these laws with respect to all current, past, and future employees of CDN's Monterey Park office. These allegations are entirely consistent with the language of Rule 23(b)(2). Furthermore, Plaintiffs clearly intend to obtain injunctive relief by bringing this action, as they allege that such relief is "necessary" and that "irreparable damage" will result if injunctive relief is not provided. Thus, both the language of the statute and Plaintiffs' intent indicate that the class should be certified under Rule 23(b)(2).

The test set forth by the Second Circuit in *Robinson v. Metro–North Commuter Railroad Co.,* 267 F.3d 147, 164 (2d Cir.2001), *cert. denied,* 535 U.S. 951, 122 S.Ct. 1349, 152 L.Ed.2d 251 (2002), also supports certifying the class under Rule 23(b)(2). Under the first prong of this test, the Court should first

---

5. Cal. Labor Code § 1194.5 provides: "In any case in which a person employing an employee has willfully violated any of the laws, regulations, or orders governing the wages, hours of work, or working conditions of such employee, *the division may seek,* in a court of competent jurisdiction, and the court may grant, an injunction against any further violations of any such laws, regulations, or orders by such person." (Emphasis added). California courts have implied a private right of action only where there is evidence that the legislature intended to do so. *See Moradi–Shalal v. Fireman's Fund Ins.,* 46 Cal.3d 287, 298 (1988). In the present case, Plaintiffs do not argue that a private right of action to seek injunctive relief exists under California wage and hour laws. Instead, they argue that their claim for injunctive relief is based on Cal. Bus. & Prof.Code § 17203. Section 17203 provides that a court "may make such orders or judgments ... as may be necessary to prevent the use or employment ... of any practice which constitutes unfair competition ... or as may be necessary to restore ... money or property." The California Supreme Court has interpreted this Section 17203 to grant "broad equitable power." *Cortez v. Purolator Air Filtration Products,* 23 Cal.4th 163, 180, 96 Cal.Rptr.2d 518, 999 P.2d 706 (2000).

ask whether, even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive relief. Plaintiffs argue that reasonable employees would undoubtedly seek to enjoin Defendant's labor law violations even if they were not entitled to recover for their past losses because most class members have ongoing employment relationships with Defendant. Indeed, Defendant's future compliance with the law may be more valuable to the class than the present claims for back pay. Under the second prong of the *Robinson* test, the Court should determine whether injunctive relief would be both reasonably necessary and appropriate were plaintiffs to success on the merits. Here, class-wide injunctive relief clearly would be both reasonably necessary and appropriate to protect CDN's employees. Since the monetary relief claims do not predominate in this case but rather appear to be on equal footing with the claims for injunctive relief, the Court certifies the class pursuant to Rule 23(b)(2). However, even though the claims are not "predominantly" for money damages, the Court recognizes that substantial monetary claims are involved in this case. The Court therefore exercises its discretion to direct that notice and an opportunity to opt out be given to class members consistent with Rule 23(c)(2)(B). *See* Rule 23(d)(2); *Molski*, 318 F.3d at 947–948 (finding that the District Court abused its discretion by certifying a non-opt-out class because substantial damages were released).

## III. Class Certification Under FRCP 23(b)(3)

■ In case a reviewing court disagrees with this Court's determination that the class should be certified pursuant to Rule 23(b)(2), this Court also addresses the arguments regarding certification under Rule 23(b)(3). To qualify for certification under Rule 23(b)(3), Plaintiffs must show that (1) common questions "predominate over any questions affecting only individual members;" and (2) class resolution is "superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3). Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022 (*quoting* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1777 (2d ed.1986)).

### 1. *Whether Common Questions Predominate*

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623, 117 S.Ct. 2231. Since this analysis presumes that common issues of fact or law have been established pursuant to Rule 23(a)(2), commonality alone is not sufficient to satisfy Rule 23(b)(3). *See Hanlon*, 150 F.3d at 1022. "In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues. 'When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.' " *Id.* (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1778 (2d ed.1986)). Moreover, settlement benefits cannot form part of a Rule 23(b)(3) analysis. Rather, the examination must rest on "legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement." *Amchem*, 521 U.S. at 623, 117 S.Ct. 2231. "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Valentino v. Carter–Wallace*, 97 F.3d 1227, 1234 (9th Cir.1996).

The Court finds that common questions of law and fact predominate in this case. These questions include: whether Defendant has a uniform policy of unlawfully treating certain classifications of employees as "exempt"; whether Defendant conducted an appropriate investigation to support a good faith defense of this policy; whether Defendant failed to pay overtime compensation to non-exempt employees; whether Defendant deprived employees of meal and rest breaks and failed to

pay appropriate penalties for missed breaks; whether Defendant failed to keep accurate records of hours worked; whether Defendant failed to provide accurate itemized wage statements to employees; whether Defendant failed to pay all wages due to employees at the time that their employment was terminated. Additional questions of fact include: whether class members receive their pay through a common compensation program or payroll system; whether Defendant performed studies to determine the amount of hours its employees actually spent on exempt versus non-exempt work; and whether Defendant has centralized oversight and supervision of its employees. A common inquiry is the most efficient and appropriate way to answer these questions. Most differences among putative class members, such as the amount of overtime premium pay owed or the number of breaks that have been missed, affect damages, not Defendant's liability. The Ninth Circuit has found that "the amount of damages is invariably an individual question and does not defeat class action treatment." *Blackie*, 524 F.2d at 905.

The Court rejects Defendant's argument that the "overriding" issue in this case is whether reporters and account executives are exempt or non-exempt from overtime requirements and that the Court must engage in an individualized inquiry into each reporter's and account executive's job duties, hours, and/or income in order to determine whether or not that individual should be classified as "exempt." Defendant relies primarily on *Ramirez v. Yosemite Water Co. Inc.*, 20 Cal.4th 785, 85 Cal.Rptr.2d 844, 978 P.2d 2 (1999) (holding that whether an employee is exempt under California law "turns on a detailed, fact-specific determination" that must take into account the actual amount of time the particular employee spends on exempt activity). However, *Ramirez* did not involve a class action or address class certification. Moreover, Defendant's argument is unpersuasive because Defendant itself classifies all reporters and account executives as exempt. Defendant cannot, on the one hand, argue that all reporters and account executives are exempt from overtime wages and, on the other hand, argue that the Court must inquire into the job duties of each reporter

and account executive in order to determine whether that individual is "exempt." Moreover, Defendant's argument ignores the fact that Plaintiffs are challenging Defendant's *policy* of classifying all reporters and account executives as "exempt."

With respect to employees classified as "non-exempt," Defendant asserts that individual issues will also predominate, but Defendant fails to explain why it reaches that conclusion. Defendant relies on a state court case from Texas, *Wal–Mart v. Lopez*, 93 S.W.3d 548 (2002), where the appellate court decertified the class consisting of all former and current hourly employees of Wal–Mart. The Plaintiffs in that case alleged that they had been denied the rest and meal breaks to which they were entitled under their employment contracts. In decertifying the class, the Texas court relied on *Basco v. Wal–Mart Stores, Inc.*, 216 F.Supp.2d 592 (E.D.La.), where the district court found that individual issues predominated because every contract at issue was created at a different time, by different employees, and under different circumstances. Unlike either of these *Wal–Mart* cases, the present case does not involve any contractual issues, as Plaintiffs allege violations of the California Labor Code, not breach of contract. Thus, none of the "individual" issues that existed in the cases relied on by Defendant exist in the present case. Defendant also relies on the Texas *Wal–Mart* case in arguing that it is entitled to inquire at trial into the "individual animus of each class member" in order to determine if there are reasons for fabrication of claims. *See, Wal–Mart*, 93 S.W.3d at 558. This argument is unpersuasive, as Plaintiffs are challenging Defendant's policies of violating California Labor laws, and whether or not individual animus exists has little to do with whether the violations occurred. The common questions of law and fact set forth above clearly predominate in this case.

### 2. Whether a Class Action is Superior to Other Methods of Adjudication

Rule 23(b)(3) also requires that class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." The superiority

inquiry requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case. *Hanlon,* 150 F.3d at 1023 (*quoting* Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *supra* § 1779). This determination involves comparing alternative mechanisms of dispute resolution. *Hanlon,* 150 F.3d at 1023.

Plaintiffs argue that class treatment in the present case is superior to the filing of individual wage claims because a class action would (1) accomplish judicial economy by avoiding multiple suits, and (2) protect the rights of persons who might not be able to present claims on individual basis. *See generally Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983). Courts recognize that employer practices and policies with regard to wages and hours often have an impact on large numbers of workers in ways that are sufficiently similar to make class-based resolution appropriate and efficient. *See, e.g., Lerwill v. Inflight Motion Pictures Inc.,* 582 F.2d 507, 512–13 (9th Cir.1978) (upholding the trial court's decision to certify the class of technicians seeking overtime pay and finding that "[n]umerous individual actions would be expensive and time-consuming and would create the danger of conflicting decisions as to persons similarly situated"). Plaintiffs also note that many members of the proposed class are non-English speaking immigrants of moderate means who would face an enormous balance of resources if they were to take on the largest Chinese language newspaper in North America on an individual basis. Proceeding by means of a class action avoids subjecting each employee to the risks associated with challenging an employer.

Defendant contends that the class action is not "superior to other available methods" because Plaintiffs may proceed through a representative action under FLSA § 16(b) or bring wage claims through the California Division of Labor Standards Enforcement (DLSE). Defendant fails to cite any authority in support of these arguments. Indeed, these arguments have been rejected by other courts. *See, e.g., Ansoumana v. Gristede's Operating Corp.,* 201 F.R.D. 81 (S.D.N.Y.

2001) (holding that certification of plaintiffs' state claims was consistent with collective action under FLSA § 16(b) and that class treatment was the superior method of adjudicating those claims). Moreover, courts have not hesitated to certify class actions for wage and hour claims simply because California law provides for administrative relief. In fact, under the California Labor Code, "an employee may seek administrative relief by filing a wage claim with the commission *or, in the alternative,* may seek judicial relief by filing an ordinary civil action for breach of contract and/or the wages prescribed by statute." *See Post v. Palo/Haklar & Assoc.,* 23 Cal.4th 942, 946, 98 Cal.Rptr.2d 671, 4 P.3d 928 (2000). Plaintiffs also note that Defendant's effort to stymie the DLSE's investigation is what led to the filing of this case. Thus, a class action is the superior method of resolving the issues in this case. Therefore, although the Court certifies the class pursuant to Rule 23(b)(2), the Court also finds that the requirements for Rule 23(b)(3) certification are satisfied in this case.

## IV. Designation of Class Counsel Under Rule 23(g)(1)

Federal Rule of Civil Procedure 23(g) requires that the district court appoint class counsel for any class that is certified. Fed.R.Civ.P. 23(g)(1)(A). The attorney(s) appointed to serve as class counsel "must fairly and adequately represent the interests of the class." Fed.R.Civ.P. 23(g)(1)(B). The appointed class counsel must be listed in the Court's class certification order. Fed.R.Civ.P. 23(c)(1)(B). In appointing class counsel, the Rule lists four factors that the Court must consider: (1) the work counsel has done in identifying or investigating potential claims in the action, (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, (3) counsel's knowledge of he applicable law, and (4) the resources counsel will commit to representing the class. Fed.R.Civ.P. 23(g).

Plaintiffs' counsel has met with named Plaintiffs and other putative class members, conducted extensive interviews, retained an expert, retained a translator, conducted sub-

stantial research regarding the legal issues, and participated in the mandated meet and confer with opposing counsel. Plaintiffs' counsel has significant experience in handling class actions and other complex litigation, developed expertise in labor code violations, and represented non-English speaking, immigrant workers in the context of complex and wage and hour disputes. *See* Bahan Decl., ¶¶ 3, 7. The Court therefore designate Bahan & Associates as class counsel.

## V. Rulings on Objections

### 1. *Defendant's Objections to Plaintiffs' Declarations*

The Court overrules all objections to the declarations of Della Bahan, Shieh Sheng Wei, Jeffrey Sun, Yun Min Pao, Albert Houng, Chingfang Chang, I–Sen Huang, Jennifer Reisch, Chenyang Yan, Hsiao–Tse Chao, and Roger Miller. The Court sustains objection #3 to the declaration of Lynn Wang to the extent that Ms. Wang describes herself as a "named class representative in this action" since this issue was not yet decided at the time of the declaration. All other objections to Ms. Wang's declaration are overruled. The court sustains objection #5 to the declaration of Yu Fang Ines Kai insofar as it includes the hearsay statement, "we were told to always write in eight hours per day, even on the days we worked more than eight hours." All other objections to his declaration are overruled.

### 2. *Plaintiffs' Objections to Defendant's Declarations*

The Court overrules all objections to the Declarations of Thomas Lentz, Cindy Hu, Grant Wu, and Lily Chueh. The Court sustains the objections to the entire declarations of Andy Si, Ying–Shen Chen, Cary Cheng, Bao Chen Chen, Erl–Sun Weng on the basis that the declaration of the interpreter who translated these declarations was not timely filed, does not attest to the accuracy of the declarations and does not establish that the documents were translated to the declarants prior to their execution. The Court sustains the objection to the entire declaration of Steven Atkinson, as the statements it contains are irrelevant and appears to be an inadmissible settlement communication. The Court sustains the objection to paragraph 8 of Andrew Sun's declaration based on lack of personal knowledge and lack of foundation. All other objections to his declaration are overruled. Lastly, the Court sustains the objections to paragraphs 4, 6, 7, 8 of Steve Gao's declaration as irrelevant.

### 3. *Defendant's Objections to Plaintiffs' Notices of Filing of Consents to Become Parties to Action Sets (1) through (4)*

Between May 4 and June 23, 2004, Plaintiffs filed four sets of Notices of Filing of Consents to Become Parties to Action on behalf of a total of thirteen employees. Defendant objects to these filings because the text of the Notice and the Consent Forms were in English and the declaration Albert Houng (filed in support of the motion for class certification) indicates that at least four of the individuals who consented to be part of the class action required an interpreter. Defendant further objects on the basis that these Consent Forms were submitted prior to any certification of the class. Finally, Defendant objects on the basis that the notices do not contain factual allegations demonstrating that the individual employees are similarly situated. Defendant submits a declaration by Defense Counsel Scott Dauscher in support of these objections. The Court overrules Defendant's objections to the Notices of Consent because these Notices were not offered as evidence in support of the Motion for Class Certification and were not considered by the Court in deciding this Motion. For the same reason, the Court sustains Plaintiff's objection to the declaration of Scott Dauscher.

## CONCLUSION

Based on the foregoing, the Court GRANTS Plaintiffs Motion for Class Certification pursuant to Rule 23(b)(2). However, the Court exercises its discretion to direct that notice and an opportunity to opt-out be given consistent with Rule 23(c)(2)(B). The

Court designates Bahan & Associates as class counsel.

**IT IS SO ORDERED.**