**Raymond VINOLE and Ken Yoder on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**COUNTRYWIDE HOME LOANS, INC., a New York corporation; and Does 1–10, inclusive, Defendants.**

No. 07CV127 DMS(WMc).

United States District Court, S.D. California.

Nov. 15, 2007.

Timothy Cohelan, Michael D. Singer, Cohelan and Khoury, San Diego, CA, for Plaintiffs.

Thomas R. Kaufman, Regina Musolino, Seyfarth Shaw, Los Angeles, CA, Lonny Zilberman, Claudette Wilson, Wilson, Petty, Kosmo & Turner, LLP, San Diego, CA, for Defendants.

## ORDER DENYING CLASS CERTIFICATION

DANA M. SABRAW, District Judge.

Plaintiffs are a putative class of current and former Home Loan Consultants ("HLCs") employed by Defendant Countrywide Home Loans, Inc. Plaintiffs initially filed suit in California State Court on October 20, 2006. On January 19, 2007, Defendant removed the case to federal court. (Doc. 1). On August 7, 2007, Defendant filed the present motion to deny class certification. (Doc. 15). The matter was heard on October 19, 2007. After considering the parties' arguments and briefing, the Court grants Defendant's motion.

## I.

## BACKGROUND

Plaintiffs' proposed class is comprised of all current and former California-based em-

ployees having the title of Loan Consultant or other similarly designated title, who have worked for Defendant "within the last four (4) years from the filing of the Complaint up to and including the time of trial of this matter." (Compl.¶ 22). Within this group, Plaintiffs propose eight subclasses based primarily upon Defendant's record-keeping, Plaintiffs' access to meal periods, and rates of pay. The one exception is the first putative subclass of "[a]ll of Defendant's California-based Loan Consultants and related positions who, at some time during the applicable limitations period, were assigned for a period of time to provide services for on-site builders or developers. ('Builder Subclass')" (Compl.¶ 22(a)).

All Plaintiffs claim they were erroneously classified as "exempt" employees under both California and federal law. Specifically, Plaintiffs claim that while classified as "exempt" employees, they worked overtime hours and meal periods for which they are now entitled to compensation. Plaintiffs also allege related claims for unjust enrichment, minimum wage violations, conversion, illegal record keeping, unfair business practices, and declaratory relief.

## II.

## DISCUSSION

### A. *Determining Class Certification on Defendant's Motion.*

■ As an initial matter, Plaintiffs argue class certification ought not to be determined at this stage of the proceedings, and particularly on Defendant's (as opposed to Plaintiffs') motion. Rule 23 of the Federal Rules of Civil Procedures, however, does not preclude a defendant from bringing such a motion. It simply provides that the "court must—at an early practicable time—determine by order whether to certify the action as a class action." Fed. R. Civ. Proc. 23(c)(1)(A). Indeed, courts have exercised discretion under Rule 23 and addressed class certification issues on the motion of a defendant. *See, e.g. Lumpkin v. E.I. Du Pont De Nemours & Co.,* 161 F.R.D. 480 (M.D.Ga. 1995); *Chevron USA, Inc. v. Vermilion Parish Sch. Bd.,* 215 F.R.D. 511, 515–16

(W.D.La.), *aff'd at Chevron USA, Inc. v. Vermilion Parish Sch. Bd.,* 377 F.3d 459, 464 (5th Cir.2004); *Sipper v. Capital One Bank,* 2002 WL 398769, 2002 U.S. Dist. LEXIS 3881 (C.D. Cal. Feb 28, 2002).

At oral argument, counsel for Plaintiffs argued this Court's scheduling order allowed Plaintiffs until December 3, 2007, to file a motion for class certification, and that it would be unfair under the circumstances to determine class status at this time. The scheduling order provides in pertinent part that, "[a]ll other pretrial motions must be filed on or before December 3, 2007." (Scheduling Order, May 7, 2007, Doc. 13). Notably, the scheduling order neither provides Plaintiffs an exclusive right nor a specifically designated period of time to address the issue of class certification.

Plaintiffs also have had sufficient time to prepare for Defendant's motion. Defendant noticed the instant motion on August 7, 2007 (Doc. 18), more than two months before the hearing occurred. Plaintiffs never requested an extension of time to brief the issues or a continuance of the motion. While Plaintiffs apparently expected they would have an opportunity to file their own motion, that is not grounds for turning Defendant away—particularly when it filed a properly noticed motion within the contemplation of the Rules.

Finally, Plaintiffs correctly observe that both parties should "have an opportunity to conduct discovery on class action issues before [their] documents in support of or in opposition to the motion must be filed." *See Carabini v. Superior Court,* 26 Cal.App.4th 239, 244, 31 Cal.Rptr.2d 520 (1994). But clearly a defense-driven determination of class certification is appropriate when "awaiting further discovery will only cause needless delay and expense." *See Lumpkin,* 161 F.R.D. at 481. Here, ten months have passed since removal of the case and the discovery cut-off date is, as of submission of this motion, three weeks away. There has been ample time for discovery on class certification issues. Indeed, at oral argument, Plaintiffs conceded that they intended to conduct no further discovery and were prepared to file their own motion within a few weeks. Under theses circumstances, it is appropriate

to address class certification at this time and on Defendant's motion.

### B. *Rule 23 and Class Certification.*

■ A district court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Dukes v. Wal-Mart, Inc.*, 474 F.3d 1214, 1224 (9th Cir.2007) (citing Fed.R.Civ.P. 23(a)). "The district court must also find that at least one of the following three conditions is satisfied: (1) the prosecution of separate actions would create a risk of: (a) inconsistent or varying adjudications or (b) individual adjudications dispositive of the interests of other members not a party to those adjudications; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; or (3) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* (citing Fed.R.Civ.P. 23(b)). The party seeking certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one of requirements of Rule 23(b) have been met. *Id.* In this case, the dispute between the parties centers primarily on whether common issues of fact predominate over individual issues pursuant to Rule 23(b)(3). Because this issue is dispositive, the discussion below is limited to this issue.

### C. *Rule 23(b)(3).*

#### 1. *The Outside Sales Exemption.*

■ The Complaint alleges Plaintiffs were misclassified as "exempt" employees under state and federal law. Exempt employees are not protected by the minimum wage and maximum hour laws that otherwise might entitle Plaintiffs to back-payments of overtime. Thus, to recover in this action, Plaintiffs must prove they were misclassified as exempt under the "outside sales exemption." (I.W.C. Wage Order 4–2001, § 1(C)). California's outside sales exemption defines an exempt employee as someone "who customarily and regularly works more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services, or use of facilities." *Id.* at § 2(M). The federal exemption is similar, but does not specify a percentage of time that must be spent outside the office. *See* 29 U.S.C. § 213(a)(1).

■ In determining whether an employee is properly classified as "exempt," courts must inquire "first and foremost how the employee *actually* spends his or her time." *Ramirez v. Yosemite Water Co.*, 20 Cal.4th 785, 802, 85 Cal.Rptr.2d 844, 978 P.2d 2 (1999) (emphasis added). A trial court also should consider "whether the employee's practice diverges from the employer's realistic expectations, whether there was any concrete expression of employer displeasure over an employee's substandard performance, and whether these expressions were themselves realistic given the actual overall requirements of the job." *Id.*

#### 2. *Predominance of Individual Issues over Common Questions of Fact.*

■ As Plaintiffs point out, federal courts have permitted class actions as vehicles to determine whether a class of employees is misclassified as exempt under state and federal law. In such cases, however, the plaintiffs generally have alleged facts regarding (a) company-wide policies governing how employees spend their time, or (b) uniformity in work duties and experiences that diminish the need for individualized inquiry.[1]

---

**1.** *See, e.g., Wamboldt v. Safety-Kleen Sys.*, 2007 WL 2409200, *13–14, 2007 U.S. Dist. LEXIS 65683, *40–41 (N.D.Cal.2007) (plaintiffs classified as exempt under "motor carrier" exemption all share same job description and drive within a certain range of hours per day.); *Breeden v. Benchmark Lending Group, Inc.*, 229 F.R.D. 623, 630 (N.D.Cal.2005) (parties agree putative class members "all performed the same duties at the same location."); *Krzesniak v. Cendant Corp.*,

Conversely, in cases where exempt status depends upon an individualized determination of an employee's work, and where plaintiffs allege no standard policy governing how employees spend their time, common issues of law and fact may not predominate.[2] In particular, where the variability of class members' duties or hours "goes to whether an individual class member has any claim at all for misclassification," class certification has been declined. *Jiminez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 253 (C.D.Cal. 2006) (individual inquiry required to determine how much time general managers spent on various tasks.)

■ Here, Plaintiffs allege no common scheme or policy that would diminish the need for individual inquiry. Indeed, most of the declarations presented by Plaintiffs, including the deposition of a named Plaintiff, indicate there is no company policy regarding how HLCs are to spend their time.[3] In their opposition brief, Plaintiffs argue only that Defendant's policy of treating *all* putative class members as exempt eliminates the need for individual inquiry, citing *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 613 (C.D.Cal.2005). However, unlike in *Wang*, Plaintiffs here have not asked for injunctive relief. In other words, Plaintiffs do not seek an injunction ordering Defendant to change its classification policy. Instead, Plaintiffs challenge the status of *each* Plaintiff as an "exempt" employee for purposes of recovering back pay. Thus, the holding in *Wang* does not assist Plaintiffs.

At oral argument, Plaintiffs called the Court's attention to a recently issued decision by a district court in the Northern District of California, *In re Wells Fargo Home Mortgage Overtime Pay Litigation*, 527 F.Supp.2d 1053, 2007 WL 3045994, October 18, 2007, Doc. 85. In that case, the district court initially noted that Wells Fargo's declarations "raised serious issues regarding individual variations among [Home Mortgage Consultant's] job duties and experiences," but ultimately concluded that "Wells Fargo's uniform policies [of automatically classifying all loan officers as exempt] weigh heavily in favor of class certification" even though plaintiffs were not seeking to enjoin the uniform classification of employees, but rather, as here, seeking only back pay. *Id.* at 1068, *11. The court based its ruling on two grounds: (1) "it is manifestly disingenuous for a company to treat a class of employees as a homogenous group for the purposes of internal policies and compensation, and then assert that the same group is too diverse for class treatment in overtime litigation"; and (2) "[t]his is particularly true in a situation such as this, where the difficulty of proving hours worked and compensation received is exacerbated by defendant's complete failure to maintain pertinent records." *Id.*

This Court respectfully declines to adopt the reasoning in *In re Wells Fargo* for two reasons. First, Defendant argues its uniform classification of all salespersons as "exempt" rewards efficiency by compensating employees for productivity rather than for time spent working. (Mot. at 10). Accord-

---

2007 WL 1795703, 2007 U.S. Dist. LEXIS 47518 (N.D.Cal.2006) (where exempt status depended upon duties performed, class certification granted when plaintiffs presented evidence that defendant "operates its locations and trains its workforce using standardized policies and procedures" and "promulgated written service standards for [plaintiffs].").

2. *See, e.g., Maddock v. KB Homes, Inc.*, 2007 WL 2221030, *11–12, 2007 U.S. Dist. LEXIS 58743, *33–35 (July 9, 2007) (class certification of real estate agents denied where individual issues predominated even though plaintiffs alleged they were all erroneously classified as exempt outside salespersons.)

3. *See* Declaration of Steve Pro, Ex. 3 ¶8 ("Although our managers will on occasion tell us we need to get out in the field to drum up business, I

have never been told that I am required to work outside the office, nor have I been told to keep track of my hours spent inside the office."); Declaration of Paul Rodriguez, Ex. 4 ¶6 ("I have never been told that I am required to work in the office."); Declaration of James Sanchez, Ex. 5 ¶7 ("I was never told that how much time [sic] I was supposed to be spending outside of the office while working for Countrywide."); Declaration of Vijay Singh, Ex. 6 ¶7 ("The managers always told us to go out and get business, but they never told us that we were required to be out in the field for any amount of time."); Declaration of Allen Sue, Ex. 7 ¶8 ("I was never told by anyone at Countrywide that I was expected to work any percentage of time outside the office.")

ing to Defendant, the exempt classification is *designed* to allow employees to make individual decisions about the number of hours they work at the office based on (a) the amount of compensation they seek and free time they desire, and (b) what they are most comfortable doing. (Mot. at 6–7). Thus, Defendant's proffer tends to show that individual variations regarding the duties and experiences of HLCs predominate over common factual and legal issues. Second, while Defendant's failure to keep records makes the individual inquiry more difficult, the propriety of Defendant's record keeping practices goes to the merits of the case and does not assist the Rule 23 analysis.

 The principal factor in determining whether common issues of fact predominate is whether the uniform classification, right or wrong, eases the burden of the individual inquiry. On that matter, Defendant's initial, uniform classification of the HLCs has only minimal relevance to the facts that ultimately must be determined at trial. In other words, regardless of the number of employees initially classified as exempt, the Court still must undertake an individual inquiry to determine how many HLCs were *misclassified* for purposes of calculating back pay due and owing.

Compounding the problem, Plaintiffs' proposed class does *not* exclude employees who admittedly *are* exempt, that is, employees who admittedly spend more than fifty percent of their time outside the office.[4] Defendant has presented numerous declarations from such putative class members indicating they spend much more than fifty percent of their working hours outside the office. Accordingly, if the Court were to certify this proposed class, it would allow putative class members who, by their own admission do not qualify for relief, to litigate inherently meritless claims through a representative action. This the Court declines to do.

Because individual questions of fact predominate over common factual and legal issues, class certification is denied.

## III.

### CONCLUSION

For these reasons, Defendant's motion to deny class certification is GRANTED.

**IT IS SO ORDERED.**

---

4. The only possible exception is the Builder Subclass, which limits membership based on employer-required time at the worksite. One putative class member recalled, "[o]n the weekends I was required to work in the sales office at various tract home developments ...." (Opp., Ex. 8 at ¶ 6). However, since there is no limitation in the subclass's definition excluding Plaintiffs who spend less than half their working time at these worksites, the Court would be required (assuming these worksites are a "place of business" within the exemption), to undertake an individualized inquiry into whether these employees "customarily and regularly" spend more than half their time at these worksites.