Peter J. **BRENNAN**, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

**MODERN CHEVROLET COMPANY**, a corporation, Defendant.

**Civ. A. No. 5–1052.**

United States District Court, N. D. Texas, Lubbock Division.

Entered Aug. 4, 1973.

Decided Aug. 6, 1973.

Richard F. Schubert, Sol. of Labor,[*] M. J. Parmenter, Regional Sol., William E. Everheart, Atty., Dallas, Tex., for plaintiff.

Aubrey J. Fouts, Key, Carr, Evans & Fouts, Lubbock, Tex., for defendant.

## MEMORANDUM OPINION

WOODWARD, District Judge.

This case is brought by the Secretary of Labor against the defendant corporation alleging violations of Sections 15(a)(2) and 15(a)(5) of the Fair Labor Standards Act of 1938 (29 U.S.C. § 201, et seq.), and was tried to the court without a jury on the 10th day of July, 1973. All parties appeared in court and were represented by counsel and after hearing and considering the evidence and argument of counsel and having examined the briefs and pleadings in this cause the court files this Memorandum Opinion which shall constitute the court's Findings of Fact and Conclusions of Law.

Jurisdiction of this action is conferred upon the court by Section 17 of the Fair Labor Standards Act of 1938, and the parties have stipulated that the defendant has been an enterprise within the meaning of the Act, has been an enterprise engaged in commerce within the meaning of the Act, and that the defendant's business of the operation of an automobile dealership in Lubbock, Texas was performed through unified operation and common control for a common business purpose with an annual gross volume of sales in excess of $250,000.00.

The Secretary claims that certain of the employees of the defendant who were engaged as new and used car and truck salesmen, and mechanics, were not paid the minimum wage required by the Fair Labor Standards Act of 1938 from the period commencing June 12, 1970 and terminating April 1, 1972. There is no claim for or allegation that any overtime is due these employees but merely that they were not paid the minimum wage of $1.45 an hour from June 12, 1970 to January 31, 1971 and the minimum wage of $1.60 an hour from January 31, 1971 to April 1, 1972.

There was introduced into evidence certain interrogatories which were served by the Government on the defendant on June 12, 1972, and there was also introduced in record the sworn answers to these interrogatories which were filed with the court on September 1, 1972. These interrogatories and the answers thereto are here referred to for all purposes.

The answers to Interrogatory No. 1 gave the names of all of the individuals who were employed by the defendant as new and used automobile salesmen, new and used truck salesmen, and as truck body mechanics for the period in question, and included a list of 68 such names.

Interrogatory No. 2 inquired as to the period of employment of each such employee, his home address and social security number, the total hours worked each day and each week by said employee during the applicable period, and if accurate records were not available to give the approximate hours worked, the rate of pay for each such week for each employee, the total compensation paid to each said employee, and his job title.

The evidence is uncontroverted that the salesmen, both of used and new cars and used and new trucks, were paid on a commission basis, but that they were each guaranteed $300 per month which was to be credited against any commission earned. Additionally the answers to interrogatories indicated that the salesmen were each furnished a car.

The salesmen were required to be on duty approximately one-half of a work-

---

[*] Regional Solicitor Office of the Solicitor, U. S. Dept. of Labor.

ing day and one-half of the salesmen would work a morning shift of four to five hours and the other one-half of the salesmen would work the afternoon shift, each shift alternating. The instructions given by the employer were to the effect that when a salesman was not on duty that he was not to service any customers who might come on the showroom floor or car lots and only in the event that a customer previously contacted by the salesman were to come on the sales floor would an off-duty salesman be allowed to wait upon him. The obvious reason for this was to give only those salesmen who were on duty an opportunity to earn a commission by sales during this period. The salesmen were not regulated or instructed in any manner as to what they could or could not do during their off-duty hours although some of them did make off-the-premises calls on prospective customers and attend to other business duties, but by and large these salesmen engaged in their own personal affairs while not on actual duty.

In addition to the commission and minimum pay, each employee was customarily afforded health and accident insurance policy benefits, the premiums for which were paid by the employer insofar as the employee was concerned, which amounted to $10.40 per month, but the employee would pay the premiums for the members of his family. This premium was apparently paid for all employees and was not deducted from the wages earned. Further, as stated above, each salesman was customarily furnished an automobile. The new car salesmen were given new cars while the used car salesmen were given a car that would be one or two years old and the truck salesmen were furnished pickups or similar type vehicle.

These salesmen were allowed to use these vehicles for their own personal needs and purposes and in several instances members of their families used these vehicles for family business. The

salesmen could not take the vehicle out of the county without notifying their employer and they were informed that they should not take any vehicle to "beer joints." Normally the salesmen would drive the automobile to and from work and would on a few occasions use it for demonstrating purposes, as the prospective customer would ordinarily want to have demonstrated to him the actual car that he was interested in purchasing. The cars would be parked at the defendant's place of business and occasionally a salesman would loan his car to other salesmen. The vehicles each carried a dealer's license tag the fee for which was paid by the company. It was intended that the salesman would have the car in his possession and available when he was on duty.

The evidence further showed that the reasonable cost to Modern Chevrolet for the furnishing of the new cars or trucks to their salesmen was $128.86 per month which would include insurance, dealer's tag, maintenance, depreciation, and interest on the floor planning of these vehicles and the financing charges. The cost was $110 a month for a used car or a used truck. There were no deductions made from the salesman's check for social security or income taxes which could be attributable to either the health and accident insurance furnished or the automobile furnished and the record is silent as to whether or not any employee reported these matters as income. The value to the employee of the vehicle furnished was equal to or exceeded the costs to the defendant as above set forth, although the employer had no records as to the value received by the employee other than its own cost records.

With respect to the records kept by the company on the hours worked, it was the practice for each salesman and mechanic to furnish a weekly time card showing the number of hours worked. It was on the basis of the cards so furnished that the interrogatories were an-

swered by the defendant. However, the defendant produced evidence showing that although these cards indicate that the employee would work eight to nine hours a day, six days a week, they were on duty on the showroom floor and car lots only about one-half of the time shown on the cards. Evidently it was the practice of the employees to perfunctorily fill in a card showing that they were working an eight, nine, or ten-hour day even though they actually were on the floor and on duty for only a part of this time. The defendant's position that these time cards are inaccurate was corroborated by four employee-salesmen, but the defendant failed to produce any evidence that proves with accuracy the actual number of hours worked by the salesmen other than the time cards themselves.

The defendant has offered three defenses:

■ 1) That the salesmen involved in this case are "outside salesmen" within the meaning of 29 U.S.C. § 213(a)(1). However, under the evidence shown in this case the court does here conclude that none of the employees involved can be afforded this exemption as they were not engaged in their activities away from the place of business of their employer, but in fact were employed to work on the premises of the employer at their showrooms and car lots. The regulations of the Department of Labor, 29 C.F.R. § 541.500, et seq., provide that to qualify for the exemption of outside salesmen the employee must be customarily and regularly engaged away from his employer's place or place of business. The facts are exactly opposite in this case and no such exemption is available.

2) That the time records submitted by the employees were inaccurate, and based on the actual number of hours worked as shown by the oral testimony the employees were paid the minimum wage during the applicable period; and

3) That even though it might be determined that each employee worked all of the hours shown on his time cards, the compensation paid each employee should include not only the commissions and wages paid in cash but also the health and accident insurance premiums of $10.40 per month plus the value of the benefits received by the employee in connection with the furnishing of the vehicles for the personal use of the salesmen.

■ Over objection from the Government, the court admitted into the record of this case the evidence which defendant claims will prove that the records kept as to the hours worked by these employees were inaccurate. It is noted that although the defendant gave sworn answers to interrogatories showing the hours worked, that the defendant did not, until the time of trial, produce any additional response to those interrogatories that would have informed the Government that the time cards were inaccurate or that the defendant had other evidence to contradict these sworn answers.

The evidence does tend to show that the time cards were inaccurate, but the defendant has not shown any other record nor has it produced any other evidence which would justify the court to disregard the sworn answers and to find as a fact that each of the employees worked a definite number of hours different from those shown on the time cards.

Therefore the court here finds that the number of hours worked and the compensation paid is as shown on Government's Exhibit 3 and there is no other evidence in the record upon which to base any other finding as to the number of hours actually worked by the employees involved in this suit.

Accordingly the court here finds, concludes and determines that the below named employees should be paid the additional sum shown opposite each of their names as they were not paid the minimum wage as required by the Act

between June 12, 1970 and April 1, 1972, to-wit:

| | |
|---|---|
| LeRoy Boling | 60.54 |
| James Brock | 188.56 |
| Bob Bronson | 67.20 |
| W. C. Carpenter | 357.67 |
| Bill Cole· | 107.38 |
| George Downey | 130.00 |
| Guy T. Floyd | 225.83 |
| Woody Frymire | 209.16 |
| Freddy Gandy | 223.88 |
| Joe Givens | 321.46 |
| Bill Gray | 296.83 |
| Jim Howard | 50.53 |
| Paul Howard | 101.59 |
| Ronald Lappee | 309.38 |
| Thearl Dean Leonard | 318.23 |
| Clayton Lovelace | 186.35 |
| Bob Lovell | 379.15 |
| Ernest Peloquin | 122.80 |
| Charles Pope | 205.97 |
| George Reid | 293.61 |
| Steve Ruten | 124.17 |
| Weldon Scarbrough | 85.40 |
| Mike Thames | 156.00 |
| Clarence Thompson | 75.63 |
| Wayne Waters | 136.93 |
| Jake Weathers | 65.58 |
| James E. Bell | 165.70 |
| Dwight Biggs | 105.92 |
| W. Horace Blevins | 380.00 |
| John Cabbiness | 13.35 |
| L. C. Gage, Jr. | 55.46 |
| William H. Hawle | 24.95 |
| Bill Martin | 61.65 |
| Harold G. Odin | 109.80 |
| J. D. Pruitt | 104.79 |

The above listed persons were salesmen and the following were mechanics:

| | |
|---|---|
| Frank Puga | 61.00 |
| Charles La Falla ° | 19.00 |
| Richard Segura | 5.17 |

The court finds and determines that the three mechanics named above worked during the periods involved for the number of hours shown on their time cards and for which they were not paid the minimum wage. In this case there is no evidence which this court accepts that these mechanics worked only a portion of the time shown on their time cards.

The third contention of the defendant needs to be reckoned with in this Memorandum Opinion and a finding of fact should be made thereon. That is with respect to the insurance premium paid for the benefit of all employees and the automobiles furnished to these salesmen and whether or not these items should be included in wages or compensation to them. If so, each employee was paid the minimum wage and there can be no recovery.

■ The premium for hospital insurance was paid each month by the defendant for the benefit of the employee. It was not in the form of a deduction from any wages due him but was a payment over and above any wages or commission due. Such payment of the premiums was not made by the employer at the direction of the employee as a voluntary assignment or order on the part of the employee. This amount was not treated as a wage to the employee or as compensation to him by deduction of any withholding or social security taxes based on such amount. Therefore, the $10.40 per month health and accident insurance premium paid on behalf of the employees cannot be considered for the purpose of the Act to be payment to the employee, but rather same is a gratuity as there has never been any direction from the employee or any assignment or order by the employee to his employer to pay such sum. Admittedly, the premium was not deducted from compensation due, but was paid in addition to the other compensation, but the manner in which it was treated by both parties indicates to the court that it falls more reasonably in the classification of a gratuity rather than payment for wages.

■■ The use of the automobile by the salesmen-employees of the defendant in this case presents a more difficult problem. 29 C.F.R. § 531.30 provides that the reasonable cost of board, lodging, and other facilities may be considered as part of the wage paid by an em-

ployer only where customarily furnished to the employees. These automobiles were customarily furnished to the salesmen. Likewise, 29 C.F.R. § 531.32 provides that the term "other facilities" may include transportation furnished employees between their homes and work, when the travel time does not constitute the hours worked under the Act and the transportation is not an instant of and necessary to the employment. This same regulation provides that "other facilities" as used in this section must be something akin to board or lodging. Further, it seems obvious that before the use of an automobile may be deemed as part of the compensation payable to an employee under the terms of the Act, that such use must be primarily for the benefit of the employee rather than necessary to the employer's business. The court recognizes that the testimony in this case was uncontradicted in showing that most of the salesmen-employees used these cars approximately 90% of the mileage driven for their own personal use. It was only on occasions that they were used for demonstration purposes, for the transaction of occasional company business, or for loaning to other company employees for similar uses that the vehicles were used directly for the defendant's benefit. But this testimony does not overcome the strong conviction that this court has obtained from the other testimony in the case that the automobiles were furnished these salesmen primarily for the benefit of the defendant-employer in this case and were necessary to the conduct of defendant's business. It is obvious that a salesman of an automobile should have an automobile in his possession at all times that would be one of those products that his employer was engaged in selling. The very nature of his duties as a car salesman would require his possession and use of an automobile, even on personal business, and that the business of his employer would suffer if this were not the case. The automobiles fur-

nished in this case can properly be termed as tools of the trade useful and used by the salesmen in the conduct of his duties and necessary to the conduct of the defendant's business.

Both employer and employees treated this automobile as something other than a compensable wage to the employee. No withholding for income tax or social security taxes was made that would indicate income to the employee, the cars had a dealer's license tag paid for by the dealer, and they were at all times available for use in the company's business. Under all of these facts and circumstances this court finds, that although in some cases an automobile could be an "other facility" and treated as wages or compensation to an employee, that in this case and under these circumstances the automobiles were primarily furnished for the benefit of and necessary to the business of the employer even though the employee received great benefit therefrom. Accordingly, the benefit to the employee of the automobiles furnished by the defendant in this case cannot be treated as compensable wage in determining whether or not minimum wages have been paid to the employee during the periods involved in this case.

Note is here made of the fact that the Government indicated in open court that the defendant has been in compliance with the Act since April 1, 1972 and has made a change in the method of keeping its records so as to prevent any future charges of violation of the Act.

The prayer for the issuance of an injunction is granted to the extent that the defendant shall refrain from violating the Act by failing to pay the above sums to the named persons, but no further injunctive relief will be awarded. The attorney for the plaintiff is here ordered to present to the court, with copy to defendant's counsel, a proposed judgment providing for the relief herein ordered.

All costs shall be taxed as against the defendant.