**Regina MADDOCK, on behalf of herself and others similarly situated, Plaintiff,**

v.

**KB HOMES, INC., Defendant.**

**No. CV–06–05241 CAS (JTLx).**

United States District Court, C.D. California, Western Division.

July 9, 2007.

Darren M. Cohen, Elana R. Levine, Eric B. Kingsley, George R. Kingsley, Kingsley and Kingsley, Encino, CA, for Plaintiff.

Anna–Mary E. Gannon, Janel Royce Ablon, Margaret Hart Edwards, Paul Robert Lynd, Littler Mendelson, San Francisco, CA, for Defendant.

**ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND GRANTING DEFENDANT'S MOTION FOR ORDER DETERMINING THAT ACTION IS NOT MAINTAINABLE AS CLASS ACTION**

CHRISTINA A. SNYDER, District Judge.

## I. BACKGROUND

On August 21, 2006, defendant KB Home (erroneously sued as "KB Homes, Inc.") re-

moved plaintiffs first amended complaint from the Los Angeles County Superior Court to this Court. On September 29, 2006, pursuant to stipulation, plaintiff filed a second amended complaint, alleging claims for (1) unfair business practices, pursuant to Cal. Bus. & Prof.Code § 17200, *et seq.*, premised upon a violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, (2) unpaid overtime pursuant to Cal. Lab.Code §§ 1194, 1199, (3) failure to provide meal breaks in violation of Cal. Lab.Code § 226.7, (4) failure to allow rest breaks in violation of Cal. Lab. Code § 226.7, (5) waiting time penalties pursuant to Cal. Lab.Code § 203, (6) penalties pursuant to Cal. Lab.Code § 2699, and (7) unfair business practices, pursuant to Cal. Bus. & Prof.Code § 17200 *et seq.*, premised upon violations of the California Labor Code.

Defendant is a nationwide seller of homes in community developments. Defendant has several subsidiaries in California, including KB Home Greater Los Angeles, Inc., KB Home Coastal, Inc., KB Home Sacramento, Inc., KB Home South Bay, Inc., and KB Home Central Valley, Inc. The subsidiaries are divided into divisions, and build and sell homes in various KB Home communities. Plaintiff alleges that she was formerly employed as a "commissioned salesperson" or "sales agent" by KB Home Greater Los Angeles, Inc., from June 6, 2005 to December 6, 2005. Plaintiff contends that she worked at the sales office in the Wild Rose community, where she gave prospective buyers tours of model homes, and helped buyers purchase homes in the community.

Plaintiff alleges that defendant improperly classified her and other commissioned salespersons as exempt under federal and state labor laws, and that defendant has a consistent policy of failing to pay wages to commissioned salespersons for all hours worked, failing to provide meal and rest breaks, and failing to pay overtime. Plaintiff seeks to represent the following subclasses:

(a) All persons who are employed or have been employed, and who have worked as commissioned salespersons at KB in the State of California since four (4) years prior to the filing of this action.

(b) All persons who are employed or have been employed, and who have worked as commissioned salespersons at KB in the State of California since four (4) years prior to the filing of this action, and have been paid commission on a flat fee basis.

Second Amended Complaint ("SAC") ¶ 18. Plaintiff seeks compensatory damages for unpaid overtime; missed meal and rest periods; penalties pursuant to Cal. Lab Code §§ 203 and 2699; an order enjoining defendant to provide class members with proper compensation, breaks, and the ability to disclose salaries; restitution; attorneys' fees and costs.

On June 14, 2007, plaintiff filed the instant motion for class certification. On June 15, 2007, defendant filed a motion seeking an order that plaintiff's action is not maintainable as a class action. On June 25, 2007, the parties filed their respective oppositions. On July 2, 2007, defendant filed its respective reply. On July 3, 2007, plaintiff filed her reply. The Court heard oral argument on July 9, 2007. The parties' motions are presently before the Court. The Court hereby finds and concludes as follows.

## II. LEGAL STANDARD

■ "Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits, and (2) to protect rights of persons who might not be able to present claims on an individual basis." *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 647 (C.D.Cal.1996) (citing *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983)). Federal Rule of Civil Procedure 23 governs class actions. A class action "may be certified if the trial court is satisfied after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

■ To certify a class action, plaintiffs must set forth prima facie facts that support the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 462 (9th Cir.2000) (in-

ternal quotations omitted). These requirements effectively "limit the class claims to those fairly encompassed by the named plaintiffs claims." *Falcon,* 457 U.S. at 155, 102 S.Ct. 2364 (quoting *Califano v. Yamasaki,* 442 U.S. 682, 701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)).

■ If the district court finds that the action meets the prerequisites of Rule 23(a), the court must then consider whether the class is maintainable under one or more of the three alternatives set forth in Rule 23(b). A class action is maintainable under Rule 23(b)(1) if "the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests." Fed.R.Civ.P. 23(b)(1). A class is maintainable under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2).

■ A class is maintainable under Rule 23(b)(3) where "questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members," and where "a class action is *superior* to other available methods for fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b) (3) (emphasis added). "The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir.1998) *(citing Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). The predominance inquiry measures the relative weight of the common to individualized claims. *Id.* "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1189 (9th Cir.2001) (citing *Valentino v. Carter–Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir.1996)). In determining superiority, the court must consider the four factors of Rule 23(b)(3): (1) the interests members in the class have in individually controlling the prosecution or defense of the separate actions; (2) the extent and nature of any litigations concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely encountered in the management of a class action. *Id.* at 1190–1993. "If the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." *Id.* (citing 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1778 at 535–39 (2d. ed.1986) (hereinafter "Wright, Miller & Kane")).

## III. DISCUSSION

### A. Evidentiary Objections

■ On June 25, 2007, plaintiff filed objections to the declarations of current KB Home employees filed in support of KB Home's motion. Plaintiff asserts that ex parte communication between defendant and these potential class members is inappropriate, and a violation of California Rule of Professional Conduct 3–600, because there is no indication that the declarants were informed that they are potential class members, and that support of defendant's opposition could prejudice their interests. Plaintiff requests that the Court strike these declarations in their entirety.

■ According to the majority view, "[i]n a Rule 23 class action, pre-certification communication from the defense to prospective plaintiffs is generally permitted." *Parks v. Eastwood Ins. Services, Inc.,* 235 F.Supp.2d 1082, 1084 (C.D.Cal.2002). Any limitation on pre-certification communications between parties and potential class members should

be "based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). "Courts have limited pre-certification communications with potential class members after misleading, coercive, or improper communications were made." *Mevorah v. Wells Fargo Home Mortg., Inc.*, No. 05–1175, 2005 WL 4813532 (N.D.Cal. Nov. 17, 2005).

Here, however, plaintiff submits no evidence to suggest that defendant engaged in any misleading or coercive communications with potential class members. In reply to plaintiff's objection, defendant submits the declaration of Paul R. Lynd, who states that all declarants signed a two-page document entitled "Prefactory Statement to Interviewees Re Purpose of Interview" (hereinafter "the Statement") before they were interviewed by defendant's counsel. Defendant submits a copy of the Statement signed by each of the declarants. *See* Lynd Decl. ¶ 2, Exs. 1–22. The Statement describes the nature of the instant case in a neutral fashion, informs the interviewee that involvement in the case is voluntary, that interviewees have the right to an attorney, and that sales agents' interests may be adverse to defendant's interests. The mere fact that defendant communicated with its class members regarding the instant suit and requested that current employees file truthful declarations, absent any evidence that the communications were misleading or coercive, is insufficient to warrant striking the declarations. Accordingly, the Court DENIES plaintiff's request to strike the declarations of KB Home sales agents submitted in support of defendant's motion.

Plaintiff further objects to specific paragraphs in the declarations submitted by defendant.[1] Insofar as plaintiff objects, on the ground of relevance, to KB Home sales agents' descriptions of their job duties, the locations of sales offices, and differences between the communities, these objections are OVERRULED because these issues are relevant, as discussed below. Indeed, the former sales agents who provide declarations on behalf of plaintiff discuss similar issues in their declarations. The Court addresses below other specific objections to evidence upon which it relies herein. All other objections are OVERRULED as moot.

Defendant also filed evidentiary objections on June 25, 2007,[2] and filed a motion to "strike misrepresentations of facts and evidence" in plaintiff's brief. Defendant objects to numerous paragraphs in the supporting declarations filed by plaintiff on the grounds that they are vague, are legal conclusions, or are not based upon personal knowledge. Defendant further moves to strike the declaration of Toni Evans because it is undated, and objects to exhibits 8–12 of plaintiff's motion because they lack authentication. The sufficiency of plaintiff's evidence is discussed below regarding whether common issues predominate under Rule 23(b)(3). All other objections are OVERRULED as moot.

### B. Rule 23(a) Requirements

#### 1. Numerosity

Rule 23(a)(1) requires the members of a proposed class to be so numerous that joinder of all of the class members would be impracticable. Fed.R.Civ.P. 23(a)(1). However, "[i]mpracticability does not mean 'impossibility,' but only the difficulty or inconvenience in joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir.1964) (quoting *Advertising Specialty Nat. Ass'n v. FTC*, 238 F.2d 108, 119 (1st Cir.1956)).

Plaintiff asserts that the requirement of numerosity is met in the instant case because there are a minimum of 100 sales agents currently employed by defendant, and many more former employees. Defendant does not appear to dispute that the members of the proposed class are sufficiently numerous. The Court concludes that the numerosity requirement of Rule 23(a)(1) is satisfied.

---

**1.** Plaintiff filed identical objections with her reply on July 3, 2007.

**2.** Defendant filed identical evidentiary objections with its reply on July 2, 2007.

**238**

## 2. Commonality

Commonality requires "questions of law or fact common to the class." Rule 23(a)(2). The commonality requirement is generally construed liberally; the existence of only a few common legal and factual issues may satisfy the requirement. *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1320 (9th Cir.1982).

Plaintiff asserts that there are numerous common issues of law and fact in this case, including sales agents' job duties, KB Home's policies and practices, whether or not sales agents were properly classified as exempt under state and federal labor laws, and whether or not sales-agents worked overtime and received meal and rest breaks. Defendant does not dispute that there are questions of law and fact common to the class. The Court therefore concludes that the commonality requirement is satisfied.

## 3. Typicality and Adequacy of Representation

Typicality requires a determination of whether the named plaintiff's claims are typical of those of the proposed class they seek to represent. Rule 23(a)(3). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D.Cal.1985) ("A plaintiff's claim meets this requirement if it arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory.").

The adequacy of representation requirement of Rule 23(a)(4) involves a two-part inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Defendant challenges plaintiff's adequacy as a class representative, as well as, by implication, the typicality of plaintiff's claims. Defendant argues that plaintiff lacks standing to assert claims on behalf of current employees, and on behalf of employees who did not work for the same subsidiary as plaintiff. Defendant argues that plaintiff lacks standing to assert a claim for injunctive relief on behalf of current employees, insofar as plaintiff seeks to change how current employees are classified. Several courts have held, however, that former employees are adequate representatives of current employees in class actions seeking, at least in part, declaratory and/or injunctive relief. *See, e.g., Wofford v. Safeway Stores, Inc.*, 78 F.R.D. 460, 489–90 & n. 6 (N.D.Cal.1978) ("[T]here is ample support for the position that former employees may represent present employees."); *Cross v. National Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir.1977). Indeed, some courts have held that former employees provide superior representation in claims against the employer on behalf of current employees. *See Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 247 (3d Cir.1975).

Next, defendant argues that plaintiff lacks standing because she released any claims against KB Home or KB Home Greater Los Angeles, Inc. ("KBLA") as a result of plaintiff's complaints to the California Labor Commissioner about KBLA. According to defendant, plaintiff complained that she had not received her commissions in a timely fashion, that KBLA forbade her to discuss her compensation, and that her commissions should have been paid semi-monthly rather than monthly. Defendant contends that plaintiff settled and released those claims against KBLA, although plaintiff could not remember at her deposition that she had made those claims. Defendant's Mot. at 12. Defendant submits a letter sent by the Deputy Labor Commissioner on August 10, 2006, to plaintiff stating that plaintiff had "released the defendant from all past and future wage claims for your employment with them and must proceed in civil court for all future proceedings." *See* Ex. 44 to Compendium of Evidence, filed June 15, 2007. Even if plaintiff released claims against KBLA regarding unpaid commissions, however, it does not appear that plaintiff released any claims for unpaid overtime or missed meal and rest breaks. Accordingly, plaintiff's prior complaints to the California Labor Commissioner

do not deprive her of standing in the instant case.

Defendant also contends that plaintiff did not actually work for KB Home; rather, she worked for KBLA, one of defendant's subsidiaries. Defendant therefore argues that plaintiff lacks standing to sue KB Home or any other entity apart from KBLA, and for that reason plaintiff is an inadequate representative of the employees who did not work for KBLA. Defendant further argues that plaintiff is an inadequate representative of other sales agents because she worked in one community for just five months, at deposition could not remember her training or job duties, and has no knowledge of the job duties of sales agents at other communities. These issues, which implicate the predominance of individual issues over common ones in this case, are better addressed below in the Court's discussion of Rule 23(b)(3).

**B. Rule 23(b)(1)**

To maintain a class action under Rule 23(b)(1), plaintiff must demonstrate that "(1) rulings in separate actions would subject defendant to incompatible judgments requiring inconsistent conduct to comply with the judgment; or (2) a ruling in the first of a series of separate actions will 'inescapably alter the substance of the rights of others having similar claims.'" *Mateo v. M/S Kiso,* 805 F.Supp. 761, 772 (N.D.Cal.1991) (quoting *McDonnell Douglas Corp. v. U.S. Dist. Ct.,* 523 F.2d 1083, 1086 (9th Cir.1975)). It is not sufficient that a defendant may be held liable in some cases, but not in others. *McDonnell Douglas Corp.,* 523 F.2d at 1086.

Plaintiff argues that certification under Rule 23(b)(1) is appropriate. Several courts, however, have held in the context of wage and hour disputes that certification under Rule 23(b)(1) is inappropriate because a defendant employer may simply treat some employees as exempt, and treat others as nonexempt. *See Jimenez v. Domino's Pizza, Inc.,* 238 F.R.D. 241, 250 (C.D.Cal.2006) ("[I]f the various plaintiffs file separate suits and achieve different results, Domino's would not be incapable of fulfilling various judgments"); *Sepulveda v. Wal–Mart Stores, Inc.,* 237 F.R.D. 229, 245 (C.D.Cal.2006) ("If each class member were to proceed separately, an injunction might (or might not) issue ordering Defendant to reclassify that particular class member as non-exempt based on an individualized analysis of duties performed. In either case, the injunction would not affect the rights of the other [employees]."). The Court agrees, and finds that certification under Rule 23(b)(1) is inappropriate.

**C. Rule 23(b)(2)**

Class certification under Rule 23(b)(2) is appropriate if the primary relief sought by the plaintiff is declaratory or injunctive. *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1195 (9th Cir.2001). "[I]n order to permit certification under [Rule 23(b)(2) ], [a] claim for monetary damages must be secondary to the primary claim for injunctive or declaratory relief." *Molski v. Gleich,* 318 F.3d 937, 947 (9th Cir.2003). Here, plaintiff seeks both injunctive and monetary relief. Therefore, the Court must determine whether the "primary relief" sought by plaintiff is declaratory or injunctive. It appears that, although plaintiff seeks mandatory injunctive relief requiring KB Home to re-classify current sales agents as nonexempt, more than half of the putative class members are former employees who would not benefit from such relief. *See* Defendant's Motion at 5; Plaintiff's Opp'n at 13. Further, plaintiff seeks an order enjoining defendant to provide class members with proper compensation, which is a request for monetary relief. As such, plaintiff primarily seeks monetary damages. *See Sepulveda,* 237 F.R.D. at 245 ("[F]ewer than half of the putative class members could benefit from the injunctive relief sought.... These factors suggest that the damages sought are not incidental to injunctive relief.... [Further, t]hat 'the damages sought are not in the nature of a group remedy but are dependent on individual circumstances' suggests that they are not incidental to the injunctive relief sought."). Certification under Rule 23(b)(2) is therefore inappropriate.

**D. Rule 23(b)(3) Requirements**

Certification under Rule 23(b)(3) is proper "whenever the actual interests of

the parties can be served best by settling their differences in a single action." *Hanlon,* 150 F.3d at 1022 (internal quotations omitted). As noted above, Rule 23(b)(3) calls for two separate inquiries: (1) do issues common to the class "predominate" over issues unique to individual class members, and (2) is the proposed class action "superior" to other methods available for adjudicating the controversy. Fed.R.Civ.P. 23(b) (3). The latter requirement requires consideration of the difficulties likely to be encountered in the management of this litigation as a class action, including, especially, whether and how the case may be tried. In making these determinations, the Court does not decide the merits of any claims or defenses, or whether the plaintiffs are likely to prevail on their claims. Rather, the Court must determine whether plaintiffs have shown that there are plausible class-wide methods of proof available to prove their claims.

## 1. Predominance of Common Issues

"Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *See Valentino,* 97 F.3d at 1234. Thus, the Court must determine whether common issues constitute such a significant aspect of the action that "there is a clear justification for handling the dispute on a representative rather than on an individual basis." 7A Wright, Miller, & Kane § 1778 (3d ed.2005). For the proponent to satisfy the predominance inquiry, it is not enough to establish that common questions of law or fact exist, as it is under Rule 23(a)(2)'s commonality requirement—the predominance inquiry under Rule 23(b) is more rigorous. *Amchem Prods., Inc.,* 521 U.S. at 624, 117 S.Ct. 2231. The predominance question "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623, 117 S.Ct. 2231. The Court, therefore, must balance concerns regarding the litigation of issues common to the class as a whole with questions affecting individual class members. *Abed v. A.H. Robins Co. (In re Northern District of California, Dalkon Shield IUD Products Liability Litigation),* 693 F.2d 847, 856 (9th Cir.1982).

The primary issues in this case are whether or not defendant properly classified plaintiff and other sales agents as exempt, and whether sales agents worked overtime and missed meal or rest breaks. Defendant asserts two bases for exemption: the outside salesperson exemption under the FLSA and California law, and the commissioned salesperson exemption under California law.

### (a) Exemption Under the FLSA

Any employee employed "in the capacity of outside salesman" is exempt from application of FLSA requirements. 29 U.S.C. § 213. Effective August 23, 2004, 29 C.F.R. § 541.500(a) provides that "[t]he term 'employee employed in the capacity of outside salesman' in section 13(a)(1) of the Act shall mean any employee:

(1) Whose primary duty is:

(i) making sales within the meaning of section 3(k) of the Act; or

(ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

(2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

Under 29 C.F.R. § 541.500(b), "work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall be regarded as exempt outside sales work." Further, "[o]ther work that furthers the employee's sales efforts also shall be regarded as exempt work including, for example, writing sales reports, updating or revising the employee's sales or display catalogue, planning itineraries and attending sales conferences." *Id.* Prior to August 23, 2004, the exemption applied to employees whose non-selling activities did not exceed 20 percent of the hours in the workweek. The proposed class implicates both the former and current regulations regarding the outside sales exemption.

On January 25, 2007, the Department of Labor ("DOL") issued two opinion letters regarding whether the outside sales

exemption applies to real estate sales agents who sell homes in a residential community built and developed by the employer as part of a common land plan. *See* DOL Wage & Hour Op. Ltrs., FLSA2007–1, FLSA2007–2 (Jan. 25, 2007). The sales agents at issue in the opinion letters worked from sales offices, typically in a model home or trailer, located in the residential community, and would leave the sales office to conduct tours with buyers. The DOL concluded that these agents qualified for the outside sales exemption because their primary duty was making sales away from the employer's place or places of business, and "lots for sale are not part of the employer's place of business but rather are the products to be sold by the sales associates." DOL Wage & Hour Op. Ltr., FLSA2007–1, at 4. Thus, "leaving the sales office to show properties, even properties located within the same subdivision, satisfies the requirement that the sales associates be engaged away from their employer's place of business." *Id.* at 5.[3] "We must give deference to the DOL's interpretation of its own regulations through, for example, opinion letters" to the extent that the opinion letters have the power to persuade. *In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.*, 481 F.3d 1119, 1129 (9th Cir.2007). Because the DOL opinion letters are consistent with the DOL's long-standing position on real estate sales agents, the Court finds the opinion letters persuasive. Accordingly, in the instant case, the various job duties performed by KB Home sales agents, the time spent on such duties, and the location at which these duties are performed, are relevant to determining whether outside sales are the "primary duty" of KB Home sales agents.

Several courts have denied plaintiffs' requests to proceed with a collective action under the FLSA because "the Court will be required to make a fact-intensive inquiry into each potential plaintiff's employment situation." *Clausman v. Nortel Networks, Inc.*, 2003 WL 21314065 at *4, 2003 U.S. Dist. LEXIS 11501 at *12–13 (S.D.Ill. May 1, 2003) (ruling that the plaintiff salesperson could not proceed with a representative action challenging the defendant's classification of putative class members under the outside sales exemption); *see also Pfaahler v. Consultants for Architects, Inc.*, No. 99–6700, 2000 WL 198888, 2000 U.S. Dist. LEXIS 1772 (N.D.Ill. Feb. 8, 2000); *Donihoo v. Dallas Airmotive, Inc.*, No. 97–109, 1998 WL 91256, 1998 U.S. Dist. LEXIS 2318 (N.D.Tex. 1998).[4]

### (b) Exemption Under California Law

California law also provides an outside sales exemption. *See* Cal.Code Regs., tit. 8,

**3.** Plaintiff's reliance on *Billingslea v. Brayson Homes, Inc.*, No. 04–962, 2006 WL 562198 (N.D.Ga. Mar. 7, 2006), is misplaced. In that case, the court ruled that the plaintiff real estate agents whose sales offices were located in the defendant's residential development, and who sold homes in the development, did not qualify as "outside salespersons" under the FLSA. However, the court in that case subsequently ordered further briefing in light of the opinion letters issued by the DOL on January 25, 2007. *See* Ex. 1 to Appendix of Certain Authorities Submitted in Support of Defendant's Opposition (*Billingslea v. Brayson Homes, Inc.*, No. 04–962 (N.D.Ca. Mar. 16, 2007)). *Brennan v. Modern Chevrolet Co.*, 363 F.Supp. 327 (N.D.Tex.1973) is also inapposite. *Brennan* deals with whether new and used automobile truck salespersons are "outside salesmen" under the FLSA, and does not address whether real estate sales agents like plaintiff meet the exemption, or suggest that the Court should ignore the DOL's opinion on the subject. Thus, contrary to plaintiff argument, the sales agents' job duties and the amount of time spent in the sales office, as opposed to showing homes

or lots, is relevant to determining whether the FLSA outside sales exemption applies to KB Home sales agents.

**4.** These cases consider whether the plaintiff may proceed with a collective action pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." However, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* In such cases, the requirements of Rule 23 do not apply. *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 482 (E.D.Cal.2006). However, in the instant case, plaintiff brings his action under Cal. Bus. & Prof.Code § 17200, rather than the FLSA directly, presumably in order to avoid the opt-in requirement of section 216(b).

§ 11040(1)(C). "Outside salesperson" is defined as "any person, 18 years of age or over, who customarily and regularly works more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services or use of facilities." *Id.* § 11040(2)(M). As the California Supreme Court explained in *Ramirez,* 20 Cal.4th at 802, 85 Cal.Rptr.2d 844, 978 P.2d 2,

> [a] trial court, in determining whether the employee is [exempt], must ... inquir[e] into the realistic requirements of the job. In so doing, the court should consider, first and foremost, how the employee actually spends his or her time. But the trial court should also consider whether the employee's practice diverges from the employer's realistic expectations, whether there was any concrete expression of employer displeasure over an employee's substandard performance, and whether these expressions were themselves realistic given the actual overall requirements of the job.

Thus, *Ramirez* calls first for an individualized inquiry into the work actually performed in a typical workweek by the employee to determine how much of that work is exempt, and second for a determination of whether the employee's work was consistent with the employer's reasonable expectations.

 Plaintiff contends that the California Division of Labor Standards Enforcement ("DLSE") has issued an opinion letter stating that sales agents working out of a sales office located at a tract housing site are not engaged in outside sales. *See* Dept. of Industrial Relations, DLSE, Op. Ltr. No. 1998.09.08 (Sep. 8, 1998), available at http://www.dir.ca.gov/dlse/OpinionLetters-byDate.htm. In this opinion letter, the DLSE states that

> employees who work out of temporary trailers or model homes and who sell newly constructed tract homes would not fall within the "outside salesperson" exemption unless they are customarily and regularly engaged in sales work for more than half their work time away from the temporary trailer or model home, or other property at

the housing tract owned or controlled by their employer.

*Id.* at 2. "Courts defer to the agency charged with enforcing a regulation when interpreting a regulation because the agency possesses expertise in the subject area." *Cicairos v. Summit Logistics, Inc.,* 133 Cal.App.4th 949, 958, 35 Cal.Rptr.3d 243 (2005) (internal quotation marks and citation omitted). Accordingly, California law on this point appears to differ from federal law. Similar to the FLSA exemption, however, evidence regarding employee job duties and the amount of time spent in the community, as opposed to engaging in sales work outside the community, will be relevant.

California also provides a "commissioned pay" exemption for any employee "whose earnings exceed one and one-half (1 1/2) times the minimum wage if more than half of that employee's compensation represents commissions." *Id.* § 11040(3)(D). "Commission wages are compensation paid to any person for services rendered in the sale of such employer's property or services and based proportionately upon the amount or value thereof." *Ramirez,* 20 Cal.4th at 802, 85 Cal.Rptr.2d 844, 978 P.2d 2 (quoting Cal. Lab.Code § 204.1). Accordingly, how KB Home sales agents' commissions are calculated, as well as the portion of sales agents' earnings comprised of commissions, is relevant to determining whether KB Home sales agents fall within the commissioned pay exemption.

California state and federal courts have certified wage and hour class actions based upon evidence of common methods of proof regarding the applicability of exemptions under California labor laws. *See, e.g., Sav-on Drug Stores, Inc. v. Superior Court,* 34 Cal.4th 319, 17 Cal.Rptr.3d 906, 96 P.3d 194 (2004); *Romero v. Producers Dairy Foods, Inc.,* 235 F.R.D. 474 (E.D.Cal.2006); *Wang v. Chinese Daily News, Inc.,* 231 F.R.D. 602 (C.D.Cal.2005). The courts in *Sav-on* and *Wang* rejected the implication that, under *Ramirez,* the issue of whether an employee is exempt under California law turns on such a fact-intensive inquiry that class certification is normally inappropriate. Another court in this district, however, has stated that *"Wang*

and *Sav–On* do not suggest that the Court should ignore the *Ramirez* standard. They merely state that the *Ramirez* inquiry is only one of many possible questions in an exemption case. In determining whether an employee should be classified as exempt or nonexempt, an individualized, *Ramirez*-type inquiry must be conducted. The proper question for the Court at this stage, however, is whether this individualized inquiry is the predominant issue." *Sepulveda,* 237 F.R.D. at 247.

In similar cases, plaintiffs established the predominance of common issues through the submission of employee declarations demonstrating that all class members share the same finite job duties that may then be classified as exempt or nonexempt, *see Sav-on,* 34 Cal.4th at 331–32, 17 Cal.Rptr.3d 906, 96 P.3d 194, or evidence that the defendant used a uniform training program to implement standardized operational procedures governing an employee's day-to-day duties, *see Alba v. Papa John's USA, Inc.,* 2007 WL 953849 (C.D.Cal. Feb.7, 2007). On the other hand, courts have denied certification of California wage and hour classes based upon a defendant's submission of evidence showing variance in employee duties, and time spent on such duties, depending upon the characteristics of the workplace, the number of employees at that location, the surrounding community, experience of employees, and personal preferences of supervisors. *See Sepulveda,* 237 F.R.D. at 249; *Jimenez,* 238 F.R.D. at 252; *Walsh v. IKON Office Solutions, Inc.,* 148 Cal.App.4th 1440, 1455, 56 Cal.Rptr.3d 534 (2007).

With all of these principles in mind, the Court turns to the evidence submitted by each party.

**(c) Plaintiff's Evidence**

Plaintiff submits declarations of former sales agents, including plaintiff, who worked at various KB Home communities. *See* Appendix of Exhibits Filed in Support of Plaintiff's Motion. In her declaration, plaintiff states that her job duties included "meeting with prospective buyers, showing models, going over KB Home information, providing updates for the community, generating week-ly reports, opening and closing the sales office and models, making sure the sales office and models were clean, picking up trash, and following up with escrow." Maddox Decl. ¶ 6. Other sales agents state similar, although not identical, job duties in their declarations. *See, e.g.,* Claybrook Decl. ¶ 4 (duties included "selling homes, opening communities for new sales, closing communities, tracking marketing and competition, onsite sales, registering clients, setting up contracts, following through escrow, handing out keys ... giving clients tours"); Stairs Decl. ¶ 5 (duties included "greeting buyers as they came in, speaking to lenders, maintaining escrow, staying in touch, following up on loan documents and closing, working on contracts with buyers, maintaining weekly call logs, maintaining weekly lender logs, maintaining daily sales reports, letting the company know of the number of appointments I had daily, daily conference calls with corporate lender, ... picking up trash in models"); Mines Decl. ¶ 5 (duties included "putting clients into the right loan (KB Home had products to choose from), preparing sales reports Sunday evenings, visiting competitors' models, comparing competition to KB products, helping prospective buyers choose a model to buy").

Plaintiff states in her declaration that she "spent approximately 80% of [her] time in the office, and 20% of [her] time on the lot." Maddox Decl. ¶ 9. The other sales agent declarations submitted by plaintiff also provide that the sales agents worked in the sales office the majority of the time. *See* Claybrook Decl. ¶ 7 ("I spent more of my time working in the sales office, than out on the lot"); S. Reyes Decl. ¶ 8 ("I spent the majority of the time working in the sales office, rather than in the development"); Flores Decl. ¶ 8 ("I usually spent at least 60% in the office, and then the remainder in the development"); Stairs Decl. ¶ 8 ("I estimate that I spent 70% in the office, and 30% out in the development"); Mines Decl. ¶ 8 ("I spent over 50% of my time working in the sales office, rather than out in the development"); Baez Decl. ¶ 8 ("I spent approximately 90% of my time in the sales office").

Plaintiff contends that she worked at two different KB Home communities, and that

she received no additional training when she moved to a different community. Maddox Decl. ¶ 2. Other sales agents also state in their declarations that they received no new training when they moved to new communities. *See* Claybrook Decl. ¶ 1; S. Reyes Decl. ¶ 1; Hunt Decl. ¶ 1; Stairs Decl. ¶ 1; Stewart Decl. ¶ 1; Rogers Decl. ¶ 1; Sanchez Decl. ¶ 1; Evans Decl. ¶ 1.

Plaintiff asserts that all KB Home expects all of its communities to be run the same way, that all sales agents receive the same training, and that KB Home micromanages the tasks that California sales agents perform. In support of this proposition, plaintiff cites to the deposition of Vanessa Linn, Vice President of Sales for KB Home Coastal, Inc., San Diego, who testifies that she manages the day-to-day operations of nine different communities, has meetings with sales agents both at the division office and in the field, and sometimes receives information from the KB Home corporate office that she may pass on to sales agents. *See* Linn Depo. at 8, 10, 25, 27; *see also* Loth Depo. at 28–29 (Vice President of Sales for KB Home Coastal, Inc., Riverside, stating that defendant sometimes provides information to him, and that information is sometimes presented to sales agents at meetings).

Plaintiff contends that KB Home imposes uniform policies and procedures upon sales agents through an online training program called "KB University." Plaintiff relies upon the deposition testimony of Wade Mayhue, Vice President KB University, who maintains the platform for "KB University," and helps define KB Home's strategy for training and development. Through "KB University," all KB Home employees have access to information regarding defendant's business model, defendant's ethics policy, customer service standards, employee benefits, and defendant's products. *See* Mayhue Depo. at 12–14.

Plaintiff also contends that all sales agents are given identical corporate materials, and in support submits a document entitled "Structured Selling Overview and Policies and Procedures Manual," which plaintiff contends was distributed to all KB Home sales agents. This document, attached as Exhibit 6 to plaintiff's Appendix of Exhibits, is dated May 2003. The document includes steps and tips for selling a home, as well as "action items" for the implementation of each step of the sale. Plaintiff also submits a document entitled "Kaufman and Broad Home Corporation Policies and Procedures Manual," dated December 31, 1997. Plaintiff does not explain the document's relevance to this case.

Plaintiff further contends that all sales agents are given virtually identical employment agreements, which detail employee benefits, termination policies, general job description, etcetera. Plaintiff submits a copy of the employment agreement for five KB Home subsidiaries in California, which defendant contends are not authenticated. *See* Exs. 8–12 to Appendix of Exhibits.

Several of the declarations submitted by plaintiff also state that the declarant received a flat rate commission on the sale of a home, regardless of the price of the particular home sold. *See* Maddox Decl. ¶ 8; Claybrook Decl. ¶ 6; S. Reyes Decl. ¶ 7; Hunt Decl. ¶ 7; Flores Decl. ¶ 7; Stairs Decl. ¶ 7; Rogers Decl. ¶ 7; Serpa Decl. ¶ 7. Each of the employment agreements submitted by plaintiff also mention commissions, but plaintiff does not attach the addendum to each agreement that would specify how that commission is calculated. Finally, all of the declarations submitted by plaintiff state that the declarant was not given meal or rest breaks.

**(d) Defendant's Evidence**

Defendant contends that the tasks performed by KB Home sales agents, as well as the locations where they perform those tasks, vary dramatically by community and by the particular agent. Defendant submits declarations of KB Home sales agents to that effect. These sales agents report that they are given discretion to decide how to spend their time, and that their job activities depend upon the type of home they are selling, the community's stage of construction, the volume of customer traffic, and the needs of particular customers. *See* Arthur Decl. ¶ 4; Betheley Decl. ¶ 5; Bjorklund Decl. ¶¶ 7, 20; Burch Decl. ¶ 16; Coen Decl. ¶¶ 3, 5; Crawford Decl. ¶¶ 9–13; Gould Decl. ¶ 13; Rock Decl. ¶ 5; Stout Decl. ¶ 11; Van Lund ¶¶ 10,

17. The time each sales agent spends in the sales office, in the community, and elsewhere also varies depending upon these factors. While some sales offices are located in model homes in the community, others are located in trailers, either on- or off-site. *See* Arthur Decl. ¶¶ 6–9; Bjorklund Decl. ¶ 16; Burch Decl. ¶ 5. Thus, while some agents show prospective buyers model homes in the community where the sales office is located, others must take buyers elsewhere. Arthur Decl. ¶ 6; Betheley ¶ 14. The sales agents report various amounts of time spent in the sales office. *See* Amy Decl. ¶ 4 ("I spent 70 percent of my time outside of the model home's sales office giving tours and showing sits in the community."); Arthur Decl. ¶ 6 ("[B]ecause I had no models to show, I spent about 85 percent of my time in the sales trailer while at Canyon Oaks.... While selling at Sienna Ridge, I spent about two-thirds of my time outside of the sales trailer engaged in selling."); Bjorklund Decl. ¶ 18 ("I estimate that I spend between 60% and 70% of my workday [in models or sitting with buyers.]"); Kapp Decl. ¶ 8 ("The amount of time I spend outside of the sales office fluctuates, depending on the season and the number of visitors."); Kenlein Decl. ¶ 7 ("I spend 5–6 hours every day outside the sales office with potential buyers[.]"). All of the declarations submitted by defendant state that the sales agents at issue were permitted to take meal breaks, as well as rest breaks when desired.[5]

Defendant submits the deposition testimony of managerial personnel, who are employed by defendant and/or its subsidiaries, who testify that each California subsidiary of KB Home selects and hires its own sales agents, determines how commissions will be calculated and paid to sales agents, and develops and implements its own policies and procedures for each division. *See* Rothfeld Depo. at 61:11–20 ("The division does the day-to-day operation of the business."); Raae–Nielsen Depo. at 32:25–33:4 (stating that divisions hire sales agents, and are not required to clear hiring decisions); Abboud Depo. at 48:18–25 (stating that divisions interview, recruit, and hire sales agents); Burnstein Depo. at 63:10–24, 65:4–18, 66:2–24 (stating that sales agents are paid a commission based upon a percentage of the general revenue of a community, which is broken down to a per unit amount, and varies by community and by sales agent); Linn Depo. at 52:2–53:7 (stating that many variables go into the calculation of a sales agent's commission, which is calculated by officials in that division).

### (e) Analysis

■ The declarations of current and former sales agents submitted by both parties, including those submitted by plaintiff, show a number of variations in job duties and time spent in the sales office. While the sales agents report many of the same job duties, primarily touring and selling homes, their duties are not identical. The declarations submitted by plaintiff state that sales agents work anywhere from 50% of the time, to 90% of the time, in the sales office. The declarations submitted by defendant depict an even broader range, with some sales agents spending 70% of the time outside the sales office, and others spending 85% of the time in the sales office.

Plaintiff offers no other evidence that defendant imposed standardized operational procedures, or that sales agents received uniform training, apart from vague and conclusory declarations by former sales agents. "KB University" appears to be more of an information source than a comprehensive training program. Defendant submits the declaration of the Vice President in charge of "KB University," who states that "KB University" does not have any control over the day-to-day activities of sales agents. *See* Mayhue Decl. ¶ 6. Plaintiff submits no evidence of particular training programs available on "KB University" that impose uniform standards on sales agents.[6] Rather, the tes-

---

5. Defendant also submits the employment agreements signed by each of these declarants. *See* Rothfeld Decl. ¶ 3, filed July 2, 2007, Exs. 1–26.

6. The documents submitted by plaintiff that are entitled "Structured Selling Overview and Poli- cies and Procedures Manual" and "Kaufman and Broad Home Corporation Policies and Procedures Manual" do not contain policies governing day-to-day schedules of sales agents, and in any event are dated 1997 or 2003, before the relevant class period began.

timony of numerous management personnel within KB Home and its subsidiaries suggests that the individual subsidiaries and communities, rather than KB Home itself, govern the day-to-day activities of the sales agents. Plaintiff merely submits evidence that the Vice Presidents of Sales of KB Home Coastal, Inc. in San Diego and Riverside manage the day-to-day activities of the communities in those divisions. These Vice Presidents testified at deposition that defendant, as the parent company, sometimes provides new procedures or information, and that they may pass that information on to sales agents. *See* Linn Depo. at 8, 10, 25, 27; *see also* Loth Depo. at 28–29. However, the fact that defendant sometimes gives information to Vice Presidents of Sales of the subsidiaries is insufficient to establish that defendant imposes uniform policies and training for all sales agents throughout California.

Thus, the applicability of the FLSA outside salesperson exemption to this case depends on numerous individualized inquiries. The applicability of the outside salesperson exemption under California law is more likely subject to common methods of proof because the entire home development is considered the employer's place of business under California law, and therefore variations in the time spent in the sales office, as opposed to out in the development, are less relevant. Numerous other individual issues, however, preclude adjudication of plaintiff's California claims on a classwide basis, as the Court next addresses.

As to the employment agreements submitted by plaintiff, although they are similar, each agreement includes different terms regarding compensation. For example, the employment agreement for KB Home Sales North California, Inc., includes a draw of $5,000; the agreement for KB Home Sales Southern California, Inc., includes a draw of $3,000, and the agreement for KB Home Coastal, Inc., provides that sales agents receive no draw. As several witnesses have testified, each subsidiary or division determines the draw and commissions that sales agents receive. Nor do the employment agreements define the number of hours sales agents must work or whether they are pro-

vided meal or rest breaks, much less define these terms identically for all sales agents in California. Thus, not only does the applicability of the commissioned salesperson exemptions turn on individual issues; whether sales agents were required to work overtime or miss meal or rest breaks also turns on individual issues. Overall, individual issues regarding sales agents' duties and compensation substantially predominate over common issues in this case.

 Further, the issue of whether KB Home meets the definition of an "employer" or "joint employer" under the FLSA and California law further demonstrates that common issues do not predominate in the instant case. In order for the FLSA to apply to the instant case, KB Home must be an "employer" of sales agents within the meaning of the FLSA. This determination is a question of law. *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465 (9th Cir.1983), disapproved of on other grounds by *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). Under the FLSA, "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). Two or more employers may jointly employ an employee for purposes of the FLSA. *See* 29 C.F.R. 791.2. In order to determine whether a defendant is a joint employer, courts look to the "economic reality" behind the relationship, and typically consider whether the alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Bonnette*, 704 F.2d at 1470. "[J]oint employment will generally be considered to exist when 1) the employers are not 'completely disassociated' with respect to the employment of the individuals and 2) where one employer is controlled by another or the employers are under common control." *Chao v. A–One Medical Services, Inc.*, 346 F.3d 908, 918 (9th Cir.2003) (citing 29 C.F.R. 791.2(b)).

The California Supreme Court has suggested that the federal definition of "employer" may be inapplicable to California law. *See Reynolds v. Bement,* 36 Cal.4th 1075, 1087, 32 Cal.Rptr.3d 483, 116 P.3d 1162 (2005); *Singh v. 7–Eleven, Inc.,* 2007 WL 715488 (N.D.Cal. Mar. 8, 2007). Thus, a different test must be applied. IWC Wage Order 4–2001 defines "employer" as any person "who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours or working conditions of any person." Cal.Code Regs., tit. 8, § 11040(2)(H). "California courts have consistently recognized that the principle test for determining employment relationships is the right of control over the manner or means of accomplishing the result desired." *Singh, supra,* at *7 (citing *Isenberg v. California Employment Stabilization Comm'n,* 30 Cal.2d 34, 39, 180 P.2d 11 (1947); *Wickham v. Southland Corp.,* 168 Cal.App.3d 49, 54, 213 Cal.Rptr. 825 (1985)).

Whether a defendant is a "joint employer" is usually an issue for summary judgment. Based upon the record before the Court, however, it appears that defendant cannot be considered an "employer" or "joint employer" under either the FLSA or California law. The evidence demonstrates that defendant's subsidiaries had the power to hire and fire sales agents, the subsidiaries supervised and controlled sales agents' schedules and duties, and subsidiaries determined the rate of compensation. While plaintiff submits evidence that defendant maintains a list of all employees, and that all KB Home subsidiaries use the same shared payroll service, these facts alone are insufficient to outweigh the contrary evidence. *See Catani v. Chiodi,* No. 00–1559, 2001 WL 920025 at *7 (D.Minn. Aug. 13, 2001) ("The record indicates that Chiodi did in fact maintain some employment records that were necessary to process the payroll. While this Court notes that this factor is similar to those in cases where 'employer' status has been found, the Court finds it is not determinative here in light of the other factors discussed above"). Nor does defendant exercise control over the wages, hours, or working conditions of sales agents. Therefore, it appears that sales agents cannot be considered employees of defendant. Further, to the extent plaintiff suggests that KB Home is the alter ego of the subsidiaries, the evidence suggests that KB Home does not direct the activities of each subsidiary, and although the various entities share certain members of their boards of directors, that fact is not enough to establish alter ego liability. *See Doe v. Unocal Corp.,* 248 F.3d 915, 926–28 (9th Cir.2001) ("An alter ego or agency relationship is typified by parental control of the subsidiary's internal affairs or daily operations.... [T]he Ninth Circuit [has] found no alter ego relationship was created where the parent company guaranteed loans for the subsidiary, reviewed and approved major decisions, placed several of its directors on the subsidiary's board, and was closely involved in the subsidiary's pricing decisions.").[7] Thus, common issues cannot predominate in this case because plaintiff and the other sales agents did not all share the same employer.

Finally, plaintiff asserts that defendant had a policy that sales agents may not disclose their compensation to anyone, on threat of termination, which policy violates California labor law. Several of the declarations submitted by plaintiff state that the "were told" or "heard" that they could not disclose compensation information, but do not say by whom they were told. Plaintiff also submits an e-mail that she receive from her supervisor, stating that plaintiff may not disclose her compensation. However, plaintiff submits no evidence of a written or uniform policy on behalf of defendant, as the parent company, on this issue. Indeed, each of the sales agents who submit declarations in support of defendant's motion state that they are not aware of such a policy, and many of the declarations submitted by plaintiff make no

7. Plaintiff argues that the current sales agents who have filed declarations on defendant's behalf state that they work for "KB Home," and therefore defendant concedes that it is the employer of the sales agents. The Court is not persuaded by this argument. *See Von Grabe v. Sprint PCS,* 312 F.Supp.2d 1285, 1301 (S.D.Cal.2003) (holding that the use of a common trademark and trade name among the defendant's numerous subsidiaries was insufficient to establish that subsidiaries were alter egos of defendant parent company).

mention of such a policy. Further, no management personnel testified at deposition that such a policy exists. Nor do the employment agreements submitted by plaintiff include such a policy. Thus, even if such a policy existed in some communities, such as plaintiff's, there is no evidence that this claim is subject to common methods of proof.

### 2. Superiority

■ In addition to a predominance of common questions, a class proponent must also demonstrate that the class action is superior to other methods of adjudicating the controversy. *See Valentino,* 97 F.3d at 1235 (explaining that the party seeking certification needs to make a "showing [as to] why the class mechanism is superior to alternative methods of adjudication"). A class action may be superior where "class-wide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino,* 97 F.3d at 1234. The greater the number of individual issues to be litigated, the more difficult it will be for the court to manage the class action. *See, e.g., Dalkon Shield,* 693 F.2d at 856. Thus, a class action is improper where an individual class member would be compelled to try "numerous and substantial issues to establish his or her right to recover individually, after liability to the class is established." Judge William W. Schwarzer, Judge A. Wallace Tashima, & James M. Wagstaffe, *Federal Civil Procedure Before Trial,* § 10:361 (The Rutter Group, 2006) On the other hand, the fact that individual members seek separate damages is not fatal to class treatment. *Id.*

Because the Court concludes that individual issues predominate in the instant case, it is clear that a class action would not be superior to other methods of adjudication. For these reasons, plaintiff's motion for class certification must be DENIED.

### IV. CONCLUSION

In accordance with the foregoing, plaintiff's motion for class certification is hereby DENIED, and defendant's motion for an order determining that plaintiff's action cannot be maintained as a class action is GRANTED.[8]

IT IS SO ORDERED.

---

8. Defendant's motion to strike "misrepresentations of facts and evidence in plaintiffs' memorandum of points and authorities" is DENIED as moot.